PODKASTELNEA *v.* MICHIGAN CENTRAL RAILROAD CO.

1. STATUTES—CONSTRUCTION.
   Effect should be given to all the provisions of a statute, if possible.

2. SAME—WORKMEN'S COMPENSATION ACT—CONSTRUCTION.
   The workmen's compensation act should not be given a construction which will nullify any of its provisions, unless necessary.

3. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—NOTICE OF CLAIM—TIME FOR FILING CLAIMS—"PHYSICAL INCAPACITY."
   The workmen's compensation act (Act No. 10, Extra Session 1912, part 2, § 15, 2 Comp. Laws 1915, § 5445), pro-

198—Mich.—21.

viding that no proceedings for compensation may be maintained unless, in the event of physical or mental incapacity, a claim is presented within six months after the removal of such incapacity, does not relate to an incapacity from physical reasons to personally make out and personally mail or deliver the claim.[1]

Certiorari to Industrial Accident Board.  Submitted June 11, 1917.  (Docket No. 31.)  Decided September 27, 1917.

Andrew Podkastelnea presented his claim for compensation against the Michigan Central Railroad Company for injuries received in defendant's employ. From an order awarding compensation, defendant brings certiorari.  Reversed.

*J. W. Dohany* and *Raymond K. Dykema* (*Frank E. Robson,* of counsel), for appellant.

*Charles L. Dibble* (*Lincoln H. Titus,* of counsel), for appellee.

FELLOWS, J.  This proceeding brings up for review the construction placed by the industrial accident board on certain provisions of section 15, pt. 2, of Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5445), commonly called the "employers' liability act."  The section involved is as follows:

"No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury shall have been given to the employer three months after the happening thereof, and unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same; or, in case of the death of the employee, or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity."

[1]On sufficiency of notice of injury under employers' liability act, see note in 21 L. R. A. (N. S.) 233.

The construction placed upon this section by the board is as follows:

"The incapacity referred to is of two kinds, viz., 'physical' or 'mental.' A proper construction of the section requires that both of these words be given effect, and by giving effect to the phrase 'physical incapacity,' it must be held that the six months' period did not commence to run until the applicant was physically able to make out and deliver the claim to respondent."

The facts disclosed on this record, briefly stated, are as follows: On March 2, 1914, claimant was in the employ of defendant putting up ice at Kalamazoo. His foot got into a hole between two cakes of ice, and he fell over, causing an injury to his ankle and limb. No bones were broken. It is claimed plaintiff's foreman was present when this took place. Claimant worked the balance of the day, and walked home about a mile. Arriving there, he found that his foot had started to swell and was quite painful. He did not work the next day, and the second day went to the office and drew his pay. Being unable to work, he remained at home, getting out in the yard some, and applied home remedies. He was not confined to his bed. The forepart of May a doctor was called, who found the joint inflamed, and treated him for it. Later he lanced the ankle and turned out the pus. After that a fibrillar growth appeared in the opening, and claimant was taken to the hospital on June 29th, and this growth was removed. He remained at the hospital until August 24th, when his attending physician considered him sufficiently recovered to be able to come to his office for such further treatment as he might require, and he returned to his home. He had not recovered so as to be able to work at the time of the hearing before the committee on arbitration April 27, 1915.

Claimant does not speak, write, or understand English. About a month after the accident he employed a fellow countryman named Nesho, who understood English, to write to the defendant claiming compensation. Defendant never received this notice, and claimant made no proof of its being sent. Nesho, at the time of the hearing, was in the old country, and his deposition was not taken. On November 19th, more than eight months and a half after the accident, claim for compensation was made through a Mr. Strifling, who was employed by claimant to perform this service. The claim was received by the company on the 20th.

It is the claim of the claimant that the section under consideration should be construed to mean that an employee is physically incapacitated from making claim for compensation, within the provisions of the section under consideration, if he is not physically able to make out the claim and take it to the post office and personally mail it, and the board so held. And it necessarily follows, as we shall presently see, that under the construction of the provision by the board it is of no importance whether such physical incapacity is the cause preventive of giving the notice or not.

We are not inclined to invoke technical rules in the construction of this act, but we cannot overlook the fact that the rights of employers and employees are both safeguarded by its provisions, that the rights of both are designed to be protected by it, and that the provisions of the law, as written, must be given force. It is a well-recognized rule of statutory construction that effect should be given to all the provisions of a statute. We should not give the act such a construction as would nullify any of its provisions unless compelled so to do. The statute deals with accidents. To hold that the injured employee is not required to make

claim for compensation until six months after he has recovered sufficiently to personally make out his claim, and personally take it to the post office, or to his employer, would nullify the purpose and the language of the limitation found in this section. The purpose of requiring a claim for compensation is to give the employer notice, to enable him to employ skilled physicians to treat and care for the employee, thus minimizing his loss, and inuring to the benefit of the employee. It is its purpose to enable him to investigate claims made against him, and to do this when the matter is fresh in the minds of those who saw or knew of the accident, and to prevent the pressing of stale and unfounded claims. These purposes cannot be carried out if we follow the construction given by the board. If such construction is followed, claims for compensation need not be made in case of any accident serious enough to confine the employee to his home until six months after he has recovered. Such construction would give no force to the limitation, would nullify its purpose, and would make the filing of claims within six months after the accident the exception, and not the rule. The whole scheme of the act is designed to work out a speedy adjustment and payment of claims for industrial accidents. The injured employee is given a reasonable time, three months, in which to give notice of the accident, and ample time, six months, to make claim for compensation, with certain exceptions, named in the section. It is not necessary for us to determine in the instant case whether the term "physical incapacity," as used in the section under consideration, contemplates incapacity from physical reasons to direct the making out and sending of the claim as is the usual course pursued. It will be sufficient to say that we cannot agree with the board; that it contemplates only an incapacity

from physical reasons to personally make out and personally mail or deliver the claim.

We have already stated that the claimant could not speak, write, or understand English. It is therefore obvious that, no matter what his physical condition was, he could not have made out the claim in English as he would be required to do; neither could he read it if it was made out for him. His want of knowledge of the English language, not his physical condition, prevented him from making out his claim; it necessitated doing what is done in the great majority of cases, what he finally did when he got Mr. Strifling to make out his claim, and what he ineffectually tried to do when he got Mr. Nesho to look after it for him.

We have examined the authorities cited in the briefs and made such independent investigation as the time at our command permitted, and are unable to find authority in point. The English cases, usually very helpful in cases arising under this act, have to deal, as far as this question is concerned, with different language than found in our act. The provisions of the English act (Stat. 6 Edw. 7, chap. 58, § 2) are as follows:

"Proceedings for the recovery under this act of compensation for an injury shall not be maintainable unless notice of the accident has been given as soon as practicable after the happening thereof and before the workman has voluntarily left the employment in which he was injured, and unless the claim for compensation with respect to such accident has been made within six months from the occurrence of the accident causing the injury, or, in case of death, within six months from the time of death: *Provided always,* That the want of or any defect or inaccuracy in such notice shall not be a bar to the maintenance of such proceedings if it is found in the proceedings for settling the claim that the employer is not, or would not, if a notice or an amended notice were then given and the hearing postponed, be prejudiced in his defense

by the want, defect, or inaccuracy, or that such want, defect, or inaccuracy was occasioned by mistake, absence from the United Kingdom, or other reasonable cause." * * *

Several of the States have, either in terms or in substance, adopted the provisions of the English act. The legislature of this State has not seen fit to do so. If the provisions of our act are not sufficiently liberal as to making claims for compensation, the question is one for the legislative branch, not for the judicial.

It follows from what we have said that the award must be reversed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.