34 N.J. Super. 470 (1955)
112 A.2d 797
MYRTLE ROBERTS, PETITIONER-APPELLEE,
v.
JOAN BEITLER AND JULIUS BEITLER, RESPONDENTS-APPELLANTS.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided March 17, 1955.
*472 Mr. Seymour B. Jacobs argued the cause for petitioner-appellee (Mr. Fred Freeman, attorney).
Mr. Osie M. Silber argued the cause for respondents-appellants (Messrs. Silber & Silber, attorneys).
FOLEY, J.C.C.
The petitioner was awarded five percent of total permanent disability resulting from a contact dermatitis found to have been caused by her employment with the respondents as a domestic. The respondents question the propriety of the award. Major among their criticisms of the judgment is the claim that the evidence does not support the finding that her condition was caused by an exposure while in their employ. Allied with this proposition is the claim that the evidence fails to establish either an accidental occurrence or a compensable disease within the contemplation of the Workmen's Compensation Act.
At the time of her mishap the petitioner was serving as a day worker in five different households each week, this routine having existed for many months. A variety of usual domestic tasks fell to her lot in these homes, washing dishes and windows, vacuuming and waxing floors, washing and cleaning utensils, and taking care of children. The use of soaps and detergents was required in her work. The respondents had a number of copper pots and pans, and on the day in question, Friday, July 2, 1954, petitioner cleaned them with a preparation named "Copperbright." It appears that this was the first time she had ever used this substance, though it had been in the respondents' house for about a year. At about 7 P.M. that evening, after she had returned home, her hands commenced itching, and on the following morning there were blisters on both hands and also on her arms and face. She then went to the Newark City Hospital where a dressing was applied, and on the following Monday a worsening of the condition prompted her to seek the advice of her physician, Dr. Schramm, who diagnosed an acid burn. She failed to associate the use of the Copperbrite with her condition until after speaking to Mrs. Beitler on Monday, *473 following her visit to Dr. Schramm, and though she and Mrs. Beitler are in disaccord about the details of the conversation it seems clear that they discussed the possible causation of the condition and that Copperbrite was mentioned in that regard.
Dr. Shapiro, a dermatologist, testified to a nexus of causation between the use of the cleaner and the condition found by him on the occasion of his first examination made two weeks after the outbreak of the disease while the patient was still displaying acute symptoms. His conclusion rested upon the theory that the use of Copperbrite was a final insult to skin whose structural integrity had been undermined by the steady and prolonged immersion of her hands in water containing various cleaning agents used in her employment as a domestic. His determination, he said, was based upon a number of clinical factors, which, when evaluated in the light of his experience, made it probable that this product had been the effective cause of the ailment. Of importance he declared to be the factors of history, findings, time relationship, and the course of the disease.
There is nothing in the respondent's case to gainsay the petitioner's assertion that she used the allegedly offending substance on the day in question. In fact, Mrs. Beitler, who was not at home for most of the day and thus had no personal knowledge about the incident, frankly declared that she was prepared to accept the petitioner's account since she had found her to be truthful and trustworthy.
Substantially considered, the respondent's proofs were limited to expert testimony by a skin specialist, Dr. Fanburg, that patch tests done with Copperbrite, in full strength and in solution form, on her thigh, were entirely negative. The failure of positive reaction within a period of 48 hours convinced him that this substance was not a primary irritant. And it was his conclusion that, inasmuch as the injury complained of had asserted itself within a comparatively short time after her exposure to Copperbrite, the tests demonstrated that the substance did not produce the claimed result. He expressed the opinion that her condition was due to some *474 other irritant to which she had become sensitized and that the place and time of the harmful contact could only be a matter of speculation. I take the view that the patch tests, standing alone, furnish no aid in the solution of our problem. Their performance on a part of the body that had not been subjected to the same conditions as the petitioner's hands deprives them of any independent force in the factual situation here found. Aside from Dr. Shapiro's general observations that the patch tests offer at best only a complementary means of diagnosis, and, even then, that their usefulness is considerably diminished where a negative reaction ensues, I am impressed by the logic of his holding that they form no criterion for judgment unless the control area has been exposed to the same predisposing forces as were the hands. It is significant to note that both dermatologists agreed that it would have been extremely hazardous to test her hands with the suspected material.
I am convinced that the petitioner's claim is well founded. It is impossible to escape the persuasive force exerted by the assertion of the primary symptoms so soon after she used the cleaning compound for the first time and the steady development of other manifestations that marked the acute stage of the disease. And it is reasonable to accept the theory espoused by Dr. Shapiro that the offending material, though probably not capable of producing harm at first contact with a normal skin, was competent to achieve this result in a dermal area that had lost its protective acid mantle through the continual daily use of detergents.
The respondent's argument that Dr. Shapiro exceeded the facts of the hypothetical question propounded to him in formulating his opinion on causation lacks force. The doctor was furnished with a hypothesis which expressly included the factors that she was employed five days a week in general housework by different employers, and that she had to use various detergents in her work. Because the doctor concluded that the petitioner was constantly immersing her hands in water containing detergents in carrying out her various employments, and, further, because he proceeded to his opinion *475 without knowledge of the names of the various detergents used, he is accused of having drawn upon his personal knowledge of the functions of a domestic in the formulation of his medical views. Statements of fact in a hypothetical question are not to be so narrowly viewed as to denude them of the reasonable intendments which they convey when appraised in the light of our common and general experience. The facts propounded were ample for the deduction made by this witness and I cannot agree that his exposition of reasoning reveals an interpolation of factors drawn from without the question. It is evident from his testimony that he did not think it necessary to know the specific detergents used, since his conclusion as to the conditioning of the skin to final insult was based upon an assumption of the frequent use of the common cleansing agents and not the use of some particularly harmful washing or scouring material.
Some criticism is leveled at the petitioner for failure to acquaint the court with the chemical analysis of Copperbrite. While, conceivably, resolution of the dispute might have been aided by evidence of the composition of the cleaner, it is pertinent to note that the petitioner's medical expert maintained that such information was not requisite. Rather, he contended that the circumstances of the employment and the sequence of events following exposure were sufficient to sustain his diagnosis. Though the burden of ultimate persuasion rests on the claimant, it is obvious that my concurrence in the projected theory of causation neutralizes her failure to advance such proof. Finally considered, the proof of chemical ingredients was material, not to the petitioner's claim, but to the respondent's disclaimer of responsibility based, as it was, upon the allegation of the total impotency of Copperbrite as an agency of harm in the circumstances described.
The facts presented by the instant case are sufficient to make out a claim for injury by accident or for compensable disease. Not only was the cause of the dermatitis sharply defined as to time, accidental nature, and occurrence (cf. Bollinger v. Wagaraw Building Supply Co., 122 N.J.L. 512 *476 (E. & A. 1939); Liondale Bleach, Dye & Paint Works v. Riker, 85 N.J.L. 426 (Sup. Ct. 1914)), but the affliction suffered was a condition of disease due to "exposure * * * to a cause thereof arising out of and in the course of his employment." (N.J.S.A. 34:15-31).
I cannot agree with the respondent's contention that if the claim should fall within the category of compensable diseases, there exists in the petitioner's case a fatal jurisdictional defect, namely, failure to give the statutory notice. This objection overlooks the fact that "actual knowledge" of an employer during the continuance of the employment of the contraction of the disease obviates the need to give formal written notice. In the course of several telephone conversations between the petitioner and respondents her physical plight was revealed, there was discussion about its causation and the mention of Copperbrite as the causative agent, and there was discussion about the possibility of alleviating petitioner's financial distress through insurance benefits, following which Mr. Beitler made inquiry of his insurer and regretfully informed petitioner that he was not covered. Her employment with the Beitlers had been regular and recurring for at least nine months. There is nothing in the record to suggest, nor is it reasonable to suppose, that a rupture of the employment relationship had occurred within the five or six days after the event of injury during which the knowledge came to the respondents. The petitioner's ailment necessitated a temporary cessation of all employment activities for a little more than three weeks, after which she again returned to her usual round of duties for her other employers, though not for the respondents. When, for what reasons, or by whom, it was determined that she should no longer work for the Beitlers does not appear. From these circumstances it is clearly inferable that the respondents acquired actual knowledge of the compensable disease during the continuance of the employment. Our courts have refused to construe the word "knowledge" in the Workmen's Compensation Act as requiring "first-hand personal knowledge," and have held that what is meant is "knowledge in common *477 parlance, such knowledge as most of us are confined to in the daily affairs of life." Allen v. City of Millville, 87 N.J.L. 356 (Sup. Ct. 1915), affirmed 88 N.J.L. 693 (E. & A. 1915).
I find that the proofs amply support the deputy director's finding that the petitioner suffered a permanent disability of five per cent of total.
A judgment may be submitted in accordance with the views above expressed.