WILLIAM W. BOWEN, PETITIONER-APPELLANT, v.
SAMUEL OLESKY, RESPONDENT-RESPONDENT.

Argued January 16, 1956—Decided February 6, 1956.

*Mr. John E. Neville* argued the cause for appellant.

*Mr. Isidor Kalisch* argued the cause for respondent.

The opinion of the court was delivered by

WACHENFELD, J. ■ The petitioner appeals from a judgment of the Appellate Division denying him workmen's compensation. *Bowen v. Olesky*, 37 *N. J. Super.* 19 (1955). An award had been granted in the Compensation Division but was set aside on appeal to the County Court. There was a dissent in the Appellate Division, making the appeal here a matter of right. *R. R.* 1:2–1(*b*); *N. J. Constitution*, 1947, *Art.* VI, Sec. V, *par.* 1(*b*).

The petitioner was employed by respondent as a butler, handy man and chauffeur. In addition to his salary, he received room and board. The room he occupied was located immediately over the garage on the second floor off the servants' stairway and separated from his employer's family sleeping quarters by a corridor.

On the Saturday night preceding the events with which we are presently concerned, he stayed at the home of a married woman, not his wife, whom he described as a girl friend. The following day, Sunday, January 25, 1953, he was with this same friend and his relatives, returning to his employer's home at about 11:15 P. M.

The employer's daughter testified that on Monday morning at about 12:30 A. M. she heard sounds coming from the kitchen and the garage area of the house and thought it was her brother returning. She waited for him, but when he did not appear she retired. The brother testified he arrived home at 2 A. M. and found nothing unusual and he too retired to his room.

On the following morning one of the maids heard the petitioner going to the bathroom and at about 8 A. M. she opened the door to his room and discovered him lying on the bed covered with blood. There was blood everywhere about the room, the mattress, the bed fixtures, the floor and even the walls to within a foot or so of the ceiling. The maid asked him what had happened and he answered he had fallen, requesting her to get something to wipe the blood from his face. She ran back, informed her mistress and then returned with a basin to help the petitioner wash the

blood off. She saw a bloody handkerchief on the floor and his broken false teeth on the bed table.

Mrs. Olesky, for whom the petitioner worked, asked him what had occurred and he replied he had fallen. Being conscious of the fact that he could not have suffered the serious injuries which he appeared to have from a fall, she called the police.

When the police arrived, they queried the petitioner, who again said he had fallen. He at first had some difficulty in recounting the events, but after a few minutes his answers were fairly coherent. For instance, he informed them he had spent Saturday night and Sunday with his girl friend and gave other information which apparently was quite correct.

The examination by the police revealed there was no blood anywhere about the house except in the petitioner's room and that Bowen's clothes were strewn on the floor but had no blood stains on them.

The police, from what they were able to observe and from the petitioner's statement, tentatively concluded he had been attacked in his room after he had removed his clothes, and by the degree of blood which was spattered about the room, surmised there was a struggle between Bowen and his assailant.

Some time that day Bowen told the police that his wallet, keys, watch and ring were missing.

Bowen on the witness stand testified that upon his return to his employer's home on Sunday night he had undressed and gone to bed. He remembered nothing else until he awoke in the hospital on Tuesday night to discover he had a ruptured right eyeball, an extensive skull fracture and many bruises and contusions. He could not remember talking to the police officers or to anyone else on Monday morning and had no recollection of anyone having attacked him.

He denied on cross-examination he ever had any visitors in his room prior to the night in question, and more specifically denied he had ever entertained women there.

One of the maids in the household, however, testified that at about 5 A. M. on Wednesday before the attack she heard two people descending the stairs from Bowen's room and one person returned shortly thereafter.

About two months after the occurrence of the incident, when the maid was cleaning Bowen's room, she found a pair of women's panties in his laundry basket.

The petitioner sought compensation upon the theory that he was the victim of an assault by someone who had entered his employer's home with intent to steal, and the thief, coming up the kitchen stairs, entered the petitioner's room by accident. When the petitioner awakened, the thief became alarmed and attacked him, taking his wallet, keys, watch and ring, and fled without entering any other room in the house.

Supporting this theory, the petitioner points to the fact that the kitchen window was found open the following morning, suggesting this might have been the way the would-be burglar entered the house.

If the petitioner's facts and theory be accepted, there is sufficient authority justifying an award. *Sanders v. Jarka Corp.*, 1 *N. J.* 36 (1948); *Giracelli v. Franklin Cleaners & Dyers*, 132 *N. J. L.* 590 (*Sup. Ct.* 1945); *Cole v. I. Lewis Cigar Mfg. Co.*, 3 *N. J.* 9 (1949); *Gargano v. Essex County News Co.*, 129 *N. J. L.* 369 (*Sup. Ct.* 1943). However, it was his obligation to establish by a preponderance of the believable testimony that he suffered an accident arising out of and in the course of his employment.

"The law places the burden of proof on the petitioner for compensation; and it is not sustained unless the evidence preponderates in favor of the tendered hypothesis. That must be a rational inference, *i. e.*, based upon a preponderance of probabilities according to the common experience of mankind. It is required to be a probable or more probable hypothesis with reference to the possibility of other hypotheses." *Gilbert v. Gilbert Machine Works, Inc.*, 122 *N. J. L.* 533, 538 (*Sup. Ct.* 1939).

See also *Green v. Simpson & Brown Const. Co.*, 14 *N. J.* 66, 69 (1953); *Bobertz v. Board of Education of Hillside Tp.*, 135 *N. J. L.* 555 (*E. & A.* 1947).

The award of compensation here was denied by the Appellate Division and the County Court because the petitioner had failed to sustain the burden of proving he was the victim of an assault by a burglar who entered his employer's premises for an unlawful purpose.

The respondent insists the logical conclusion from the evidence submitted proves the assault was the result of personal vengeance heaped upon the petitioner and was entirely extraneous to and totally divorced from his employment.

Emphasis is placed upon the fact that the complete record indubitably proves a violent struggle took place between Bowen and his assailant, while there is added significance in the fact that the answers given by Bowen on the morning following the attack to both his employer and to the police were evidently false.

Bowen himself, it is stressed, thought he was the victim of a personal attack, as he suggested to the police when they inquired if he was suspicious of anyone after he had been taken to the hospital and had fully regained consciousness that one of the housemaids was "jealous."

Then, too, the record demonstrates that when the petitioner was discovered the morning following the incident, the light in his room was on, which, inferentially at least, negatives the suggestion that the petitioner was assaulted by a burglar while asleep. We can conceive of no appealing reason why the burglar, if there was one, would have entered a lighted room or, if the room was dark, would have turned on a light.

There also is the testimony of Mrs. Olesky's daughter which suggests the assault took place at about 12:30 A. M. when she heard noises coming from Bowen's part of the house while she was up watching television and had lights on in the house. The query is immediately raised as to whether or not it is likely or probable that a burglar, under those circumstances, would have attempted to enter the house in violation of law.

Although the petitioner must sustain the burden of proof, the Compensation Act is to be liberally construed in his favor. Such liberality, however, is not tantamount to

a guaranteed recovery, nor is it a substitute for the required proof to establish the claim. *Giles v. W. E. Beverage Corp.*, 133 *N. J. L.* 137 (*Sup. Ct.* 1945). While the act is remedial in its nature, we will not by judicial decree direct compensation contrary to the legislative enactment and intention. *Henderson v. Celanese Corp.*, 16 *N. J.* 208 (1954).

The basic questions here still remain unanswered: who assaulted the petitioner and why?

Additionally, was the petitioner actually unable to make a more realistic disclosure of what actually occurred or was he in truth aware of what took place and was he attempting to shield someone? If not, why did he first tell the police, his employer and the doctors he sustained his injuries by a fall, obviously untrue by both the lay and expert testimony? Why did he not cry out for assistance when he was being assaulted, and was his failure to do so occasioned by the same reasons as his apparent untruthful utterances after the event? Why the variation from this version to the one of being struck outside the house or the suggestion that the jealousy of a maid might have contributed? What about the presence in the petitioner's bedroom of a lady's undergarment? Whose was it? How did it get into the petitioner's room, and was it related in some manner to the injuries inflicted? Then, too, there is the mysterious nocturnal visitor to the petitioner's bedroom a few days before the assault. What, if any, bearing did this incident have upon the subsequent events?

To be sure, there is some evidence supporting the petitioner's theory: the wallet with its contents and the other items, according to him, were taken by the intruder, and the kitchen window was open. But this testimony stands alone against the many unexplained circumstances already enumerated and others permitting contrary unfavorable inferences. As the Appellate Division below said:

"We conclude that the case ends with a question mark; that the evidence, direct and circumstantial, supporting petitioner's theory, is not sufficient to sustain the burden of proof cast upon him."

No matter what analysis the testimony is subjected to, there still remains a residue of unanswered important factual equations, all by law within the petitioner's obligation to explain and prove. His failure to sustain the burden in this respect dictates a judgment for the respondent.

The County Court and the Appellate Division found for the respondent, and our examination of the record discloses no error in the judgment so entered justifying the substitution of the petitioner's unproven version.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—6.

*For reversal*—None.