51 N.J. Super. 208 (1958)
143 A.2d 802
DOROTHY MITCHELL, PETITIONER-RESPONDENT,
v.
MUCON CORP., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided June 25, 1958.
*210 Mr. Edward B. Meredith, argued the cause for respondent-appellant.
Mr. Seymour B. Jacobs argued the cause for petitioner-appellee (Mr. Fred Freeman, attorney; Mr. Jacobs on the brief).
CONKLIN, J.C.C.
This is a workmen's compensation appeal, brought by respondent after a finding of 7 1/2% of permanent partial total disability below.
Petitioner had been employed by respondent Mucon Corp. for a period of approximately six years at the time of the alleged manifestation of injury to her back on February 20, 1957. Her job was that of calculation with a slide-rule and micrometer. By way of working accommodations Mrs. Mitchell was provided with a high chair, the seat of which was 27 inches off the ground, and a table, the height thereof being 34 1/2 inches. There was a shelf under the table-top which prevented her from sitting in a position directly facing her work. In order to perform her duties petitioner assumed a position at a right angle to the table with her right side pressed against said table and her legs perched on the rung of the chair. She then twisted the trunk of her body in order to perform her work on the table. On the date in question petitioner alleges a feeling that something pulled loose in her back and a sudden sharp pain. She attempted to alleviate the pain through application of heat and before leaving work reported the incident to an employee of respondent who was identified as the "secretary in the ladies' room." That night at home, while reaching for a newspaper, she suffered sudden, severe pains. The following day, February 21, 1957, petitioner alleges that she reported the incident at work to her foreman. That same day petitioner consulted Dr. Max Novich who had her immediately admitted to the Crippled Children's Hospital, where she remained until March 14, 1957, undergoing treatment for her back. After the treatment was completed, Mrs. Mitchell returned to work at the same job. It is interesting to note that at this time *211 the aforementioned shelf under the table had been removed and she was now able to perform her duties seated in a position facing said table. Petitioner recited a previous history of back trouble, allegedly due to conditions at work, occurring on July 3, 1956, and necessitating her absence from work for hospitalization and treatment during the subsequent six-week period. Following this she returned to her job at Mucon Corp., where she has remained since.
Dr. Max Novich, petitioner's treating physician, testified as to his original examination, hospitalization and treatment of petitioner. His diagnosis was a low back strain with peripheral neuritis. On cross-examination Dr. Novich stated that a digital movement in adjustment of the slide-rule could result in a muscle tear of the lower back. This was predicated on the interconnection of the muscles of the body and the factor of constant strain due to the position assumed in the employment.
Dr. Pasquale F. Cardinale, a specialist in industrial medicine, was called on behalf of petitioner as an examining physician. On the basis of his examination and the hospital record, Dr. Cardinale diagnosed the condition as a severe lumbosacral strain and estimated 15% of partial total disability. On cross-examination Dr. Cardinale also related petitioner's severe back pain to her digital movements coupled with the twisted position in which she worked.
It was during the recross-examination of Dr. Cardinale that petitioner, over the objection of respondent, was allowed to amend the complaint to include occupational disease as well as the previously alleged accident.
Dr. E. McCarroll, petitioner's family doctor, was called as a witness by respondent. She testified as to various and sundry female disorders, aches and pains for which she had treated petitioner over the years. It was during July of 1956, while Mrs. Mitchell was waiting to enter the hospital for treatment of a female disorder, that Dr. McCarroll took care of a back disorder which arose from an apparent accident. The cause of that accident was not elaborated on by Dr. McCarroll.
*212 Dr. William B. Ein, respondent's medical expert, diagnosed Mrs. Mitchell's condition as a probable lumbosacral strain and estimated disability at 5% of total. Dr. Ein found no connection between petitioner's digital movements and her back condition. Nor did he feel that the twisted position in which petitioner worked was responsible. He had no explanation for petitioner's statement that something gave in her back at work. On cross-examination Dr. Ein, in answer to a hypothetical question, theorized that petitioner had a chronic back condition which recurred spontaneously for many years, marked by periods of pain and discomfort without any untoward cause. The hypothetical question included reference to the incident of July 3, 1956. Dr. Ein attributed the sudden snap in the back to the incident of reaching for a newspaper on the evening of the day of the alleged incident at work (February 20, 1957), rather than to the incident at work itself.
The Deputy Director discounted the theory of Dr. Novich and Dr. Cardinale as to movement of the fingers causing a back strain. While eliminating accident as a basis for recovery, he found that a compensable work-connected condition did exist which caused disability on February 20, 1957. This finding seemingly was based to some extent on the testimony of Dr. Ein who had found a lumbosacral strain in his examination. Although not specifically so stated, the deputy director's finding of 7 1/2% of permanent partial total disability was obviously based on the occupational disease sections of the compensation statute. R.S. 34:15-30 et seq.
At the outset, this court is enabled to summarily dispose of one issue. During the course of the hearing below, petitioner, over the objection of respondent, was permitted to amend her accident complaint to include a count for occupational disease. In the oral argument before this court respondent admitted that counsel below had notice at the pretrial conference before the Deputy Director that occupational disease would be alleged. Respondent has here stipulated that there was no surprise and that the issue was fairly tried out below. Therefore, the court dismisses surprise as *213 a ground for appeal, and finds in accordance with the stipulation of respondent that there was no surprise and that a fair trial of the issue of occupational disease was had.
This court will not lightly disturb the determinations below as to the credibility of witnesses. The Deputy Director maintains a distinct advantage in his personal observation of witnesses and their demeanor. Goldmann v. Johanna Farms, Inc., 26 N.J. Super. 550 (Cty. Ct. 1953); Mason v. Evans, 5 N.J. Super. 338 (App. Div. 1949); Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 533 (Sup. Ct. 1939). Although such regard as is necessary will be given to the findings of credibility by the Deputy Director, this court must make independent determinations on such matters. Zaklukiewicz v. Western Electric Co., 16 N.J. Super. 189 (App. Div. 1951). This is in keeping with our courts' conception, under the rules of court, as to a workmen's compensation appeal being in the nature of a trial de novo on the record below. R.R. 5:2-5.
Respondent urges, as a ground for a finding in his favor, the failure of petitioner to give written notice of the contraction of an occupational disease under R.S. 34:15-33. In so doing respondent has not taken account of the first part of that section of the act which reads as follows:
"Unless the employer during the continuance of the employment shall have actual knowledge that the employee has contracted a compensable occupational disease * * *" [thereafter continuing with the requirement for written notice].
As may be seen from a reading of the above section, such knowledge obviates the necessity for written notice. First-hand personal knowledge is not required under the statute. Rather, the knowledge may be described as that attributable to the famous "reasonable man" in the ordinary course of business affairs. Roberts v. Beitler, 34 N.J. Super. 470 (Cty. Ct. 1955); Calabria v. Liberty Mutual Insurance Co., 4 N.J. 64 (1950); Allen v. City of Millville, 87 N.J.L. 356 (Sup. Ct. 1915), affirmed 88 N.J.L. 693 (E. & A. 1915). This court finds that Mucon Corp. had *214 such actual knowledge of the existence of an occupational disease through the report of Mrs. Mitchell to her foreman, Solomon Portriak, on February 21, 1957. The court finds Mrs. Mitchell's testimony as to the report of her disability, and of its nature, to be completely credible. Certainly a report by a worker, of disability, to her foreman is sufficient to put the employer on notice, especially when accompanied by the subjective observation of the employee that such disability is due to, and caused by the position in which the employee is forced to work. In addition thereto, respondent knew, or should have known of petitioner's previous six-week absence from work commencing July 3, 1956, which was due partially to a back condition. This, too, should have been some indication to the employer. However, this court specifically finds that the requirement of actual knowledge on the part of employer under R.S. 34:15-33 was satisfied by the aforementioned report to the foreman on February 21, 1957.
The next problem to be determined by the court is as to whether or not petitioner has sustained a compensable occupational disease under the definition thereof contained in R.S. 34:15-31, to wit:
"For the purposes of this article, the phrase `compensable occupational disease' shall include all diseases arising out of and in the course of employment, which are due to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or employment, or which diseases are due to the exposure of any employee to a cause thereof arising out of and in the course of his employment."
In proceeding to this problem, the court disposes of as being beyond its limited power of comprehension, the theory advanced by Drs. Novich and Cardinale of muscle tear and back strain due to digital movement. That theory, as a basis for recovery because of an alleged accident on February 20, 1957, must be, and hereby is rejected.
Necessarily contained in this question is the issue as to whether a lumbosacral strain is a disability contemplated as compensable under the act, and more specifically *215 the occupational disease sections thereof? R.S. 34:15-30 et seq.
"The Legislature intended by the amendment [of R.S. 34:15-30 and 31] to eliminate the restrictive provisions of the act by substituting for the specific list of diseases all occupational diseases. Whether a disease is occupational must be decided on the peculiar characteristics of each employment and the effect it has on the individual who suffers from that employment."
Bondar v. Simmons Co., 23 N.J. Super. 109, 115 (App. Div. 1952) affirmed per curiam 12 N.J. 361 (1953). See Giambattista v. Thomas A. Edison, 32 N.J. Super. 103 (App. Div. 1954). The crux of the matter centers on proof of a causal connection between the conditions of employment and the disability complained of. Where the injury can be "linked up" with the type of work or conditions under which it is performed, the workman is entitled to compensation concomitant therewith. See 1 Larson, Workmen's Compensation Law, sec. 41.00 et seq. (1952). The Giambattista case, supra, 32 N.J. Super. at page 113, specifically defined "disease" under our statute as "any departure from the state of health presenting marked symptoms."
Two cases present themselves as particularly pertinent to the matter in hand. In Bondar v. Simmons Co., 20 N.J. Super. 147 (Cty. Ct. 1952), affirmed 23 N.J. Super. 109 (App. Div. 1952), affirmed per curiam 12 N.J. 361 (1953), petitioner, in the operation of a mattress-stuffing machine, was required to push and pull a lever a distance of less than a foot 500 to 700 times a day. The finding of the County Court as to a compensable occupational disease (bursitis) was affirmed in both appellate courts. Abelit v. General Motors Corp., 46 N.J. Super. 475 (App. Div. 1957), presented a situation involving a workman who operated a hand drill while his body was bent at a 90° angle. This drilling was done to the floor of an automobile while it was in constant motion on an assembly line. The Appellate Division affirmed an occupational disease award based on the finding of a winged right scapula. These cases the court finds to be of particular interest since they present pictures of repetitive *216 movements in strained positions of work. In consideration of these cases the court can do no less than find that a lumbosacral strain is a compensable occupational disease, under the definition contained in R.S. 34:15-31, where it is caused by a twisted, unnatural position necessarily assumed in the performance of duties required by the employment.
The final inquiry left to this court is as to whether petitioner has sustained her burden of proof in connecting her disability to work induced causes? The burden of proof which a petitioner is required to maintain in a workmen's compensation matter is that of establishing, by a preponderance of the probabilities, that a causal relationship exists between the characteristics of his employment and a compensable disability from which he suffers. Such evidence may be direct, circumstantial or presumptive. See Ciuba v. Irvington Varnish and Insulator Co., 27 N.J. 127 (1958); Green v. Simpson and Brown Construction Co., 14 N.J. 66 (1953); Jochim v. Montrose Chemical Co., 3 N.J. 5 (1949); Nardone v. Public Service Electric & Gas Co., 113 N.J.L. 540 (Sup. Ct. 1934); Jackson v. Delaware, L. & W.R.R. Co., 111 N.J.L. 487 (E. & A. 1933).
Petitioner, in her direct testimony, sufficiently set forth a picture of work in an unusually twisted and strained position. These facts were uncontradicted by respondent's proofs. As a matter of fact, respondent presented no lay witnesses to dispute petitioner's testimony, but restricted itself solely to Mrs. Mitchell's prior medical history through Dr. McCarroll, and an attempt to show by its expert, Dr. Ein, that while petitioner did manifest a back condition amounting to a disability, it was not work caused or connected. Nowhere in Dr. McCarroll's testimony did she state as her expert conclusion, nor is it likely that she could have under the circumstances, a connection between prior treated female disorders and the present disability. Nor did Dr. McCarroll relate a history pertinent to a chronic back disorder, a possibility hinted at by Dr. Ein. Dr. McCarroll's testimony as to the incident and treatment commencing on or about July 3, 1956, would more than seem to lead toward a determination *217 of a recurring back disorder related to the present employment factors, rather than to a conclusion of a chronic back condition. Dr. Ein, on the other hand, takes a position equally hard to sustain in attempting to relate the sudden acute pain to the incident of reaching for a newspaper, while completely discounting the digital movement theory presented by petitioner's medical witnesses. He is also at a loss to explain petitioner's other back manifestations. The court finds, in this respect, that the theories of none of the doctors set forth a proper basis for an explanation of petitioner's back condition.
However, the court does find the following factors to be indisputedly present. Petitioner, in the course of her employment, was compelled to work in a twisted and unnatural position. Respondent's medical expert, Dr. Ein, testified that petitioner was suffering from a disability which he characterized as a lumbosacral strain. This is in keeping with the general medical findings of Drs. Novich, Cardinale and McCarroll, even though not concomitant with the theorizations of the former two.
The court therefore finds, on the basis of the record and arguments of counsel, that petitioner has sufficiently maintained her burden on the basis of all the evidence submitted, to the effect that she sustained a compensable, work-connected occupational disease which was directly caused by, and related to the unorthodox position she was forced to assume in her employment. This disability the court finds to be a lumbosacral strain and sets the compensation rate at 7 1/2% of partial permanent.
Let an appropriate order be submitted.