693 A.2d 894

ARTHUR BROCK, PETITIONER–RESPONDENT,
v. PUBLIC SERVICE ELECTRIC & GAS
CO., RESPONDENT–APPELLANT.

Argued February 3, 1997—Decided May 29, 1997.

*Robert Silver* argued the cause for appellant (*Michals, Wahl, Silver & Leitner,* attorneys).

*Susan P. Callahan* argued the cause for respondent (*Galex, Tortoreti & Tomes,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

This appeal concerns the effect of a failure to comply with the notice requirement of *N.J.S.A.* 34:15–33 on an employee's right to recover workers' compensation benefits for an occupational disease. Read literally, that statutory provision bars the payment of benefits for death or disability resulting from occupational disease unless the employer either had actual knowledge of the condition or received written notice thereof within five months after the employee ceased to be exposed to the disease or within ninety days after the employee knew or should have known the nature of the disability and its relation to the employment, whichever is later.

A divided panel of the Appellate Division held in a published opinion that failure to comply with the statutory notice requirement is not a bar to compensation unless the employer was prejudiced by the noncompliance. 290 *N.J.Super.* 221, 227, 675 A.2d 668 (1996). The dissenting member was of the view that

non-compliance with the statute precluded recovery of benefits, irrespective of prejudice to the employer. *Id.* at 230–31, 675 *A.2d* 668 (Loftus, J.A.D., dissenting). The employer, Public Service Electric & Gas Co. (PSE & G), appeals as of right. *R.* 2:2–1(a)(2).

I

Respondent, Arthur Brock, worked for PSE & G in various capacities including utility helper, boiler cleaner, maintenance helper and machinist from March 1956 until his retirement in 1987. That he regularly handled and was exposed to asbestos products in the course of his employment at PSE & G is not disputed.

When Brock experienced shortness of breath in 1988, an attorney suggested that he consult a physician, who diagnosed his condition as a mild localized pleural reaction in the right lung and recommended a reevaluation in six months. When his symptoms worsened in 1989, Brock was examined by Dr. David Goldstein, a pulmonary internist, who concluded in a report dated October 19, 1989, but mailed November 8, 1989, to Brock's attorney that Brock suffered from pleural asbestosis. Apparently, Brock first learned of his condition when he received a copy of Dr. Goldstein's report from his attorney.

During 1990, Brock instituted suit against various manufacturers, distributors, and suppliers of asbestos materials to which he had been exposed while working for PSE & G. The suit was settled, and Brock received a series of payments from defendants commencing March 14, 1991, and ending July 7, 1993.

On October 23, 1991, approximately two years after he learned that he had been diagnosed with pleural asbestosis, Brock filed a workers' compensation claim petition against PSE & G alleging that he had developed asbestosis as a result of his employment. Although PSE & G did not assert in its answer to the petition Brock's failure to comply with the notice requirements of *N.J.S.A.* 34:14–33, it moved to dismiss the petition on that ground prior to trial and the pretrial order included the failure to give notice as an

issue in dispute. The Appellate Division rejected Brock's contention that PSE & G's failure to assert lack of notice as a defense in its answer constituted a waiver of the issue, reasoning "that Brock was actually aware throughout these proceedings that [PSE & G] had contested the adequacy of the notice given." 290 *N.J.Super.* at 224, 675 *A.*2d 668. That disposition is not contested before this Court.

After the conclusion of the three-day trial, the Workers' Compensation court granted PSE & G's motion to dismiss the petition because of Brock's failure to provide timely notice, as required by *N.J.S.A.* 34:15–33, that he had contracted a compensable occupational disease. The Workers' Compensation court observed that even if Brock's first knowledge of his disability and its relationship to his employment did not occur until March 14, 1991, the date on which he received the first settlement check from the third-party tort action that he had instituted, he did not notify his employer until more than seven months later. Rejecting the contention that the late notice should not bar the petition because PSE & G had not been prejudiced, the Workers' Compensation court apparently concluded that prejudice was irrelevant and that compliance with the statutory notice mandate was a jurisdictional prerequisite to Brock's right to recover compensation.

Reversing, the Appellate Division majority acknowledged the existence of a substantial body of out-of-state decisional law holding that failure to comply with analogous workers' compensation statutory notice provisions bars recovery irrespective of prejudice to the employer, and that the contrary decisions excusing late notice based on lack of prejudice were based on statutory provisions specifically authorizing that result. 290 *N.J.Super.* at 225–26, 675 *A.*2d 668. The majority also acknowledged that *N.J.S.A.* 34:15–33 contains no reference whatsoever to employer prejudice. Nevertheless, the court construed the statutory notice requirement to serve as a bar to occupational disease claims only if an employer can demonstrate prejudice as a result of the late notice. *Id.* at 227, 675 *A.*2d 668.

## II

The basic principles that govern disposition of this appeal are well settled. The standard for appellate review of a workers' compensation judge's determination is equivalent to that used for review of any nonjury case, which requires the reviewing court to determine whether the findings reasonably could have been reached on the basis of sufficient credible evidence in the record, with due regard to the agency's expertise. *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.2d* 753 (1965). An agency's interpretation of a statute, however, although entitled to some weight, is not binding on the reviewing court. *Carpet Remnant Warehouse v. Department of Labor*, 125 *N.J.* 567, 587, 593 *A.2d* 1177 (1991).

First enacted in 1911, *see L.* 1911, *c.* 95, the Workers' Compensation Act (Act) is "humane social legislation designed to place the cost of work connected injury upon the employer who may readily provide for it as an operating expense." *Tocci v. Tessler & Weiss, Inc.*, 28 *N.J.* 582, 586, 147 *A.2d* 783 (1959). Our courts consistently have accorded the Act a liberal construction. *See Bunk v. Port Auth.*, 144 *N.J.* 176, 191, 676 *A.2d* 118 (1996); *Squeo v. Comfort Control Corp.*, 99 *N.J.* 588, 596, 494 *A.2d* 313 (1985); *see also Kahle v. Plochman, Inc.*, 85 *N.J.* 539, 547, 428 *A.2d* 913 (1981) ("It has long been axiomatic to this Court that the Act is remedial social legislation and should be given liberal construction in order that its beneficent purposes may be accomplished."). Nevertheless, our courts have observed that the preference for a liberal construction of the Act must be constrained by the plain meaning of the statute and the underlying purpose of the legislature. *See Bowen v. Olesky*, 20 *N.J.* 520, 526, 120 *A.2d* 461 (1956) ("While the act is remedial in its nature, we will not by judicial decree direct compensation contrary to the legislative enactment and intention."); *accord Bush v. Johns-Manville Prods. Corp.*, 154 *N.J.Super.* 188, 192, 381 *A.2d* 65 (App.Div.1977), *certif. denied*, 75 *N.J.* 605, 384 *A.2d* 835 (1978); *Buzza v. General Motors Corp.*, 49 *N.J.Super.* 322, 333, 139 *A.2d* 790 (App.Div.1958).

The legislative history of *N.J.S.A.* 34:15–33 does not reveal a legislative purpose to excuse noncompliance with the notice requirement absent proof of prejudice. The notice provision was enacted in 1924 when the Legislature amended the Act to provide coverage for injury or death sustained as a result of an occupational disease. *L.* 1924, *c.* 124. The 1924 amendments required that compensation claims based on occupational disease had to be filed within one year after the employee ceased to be exposed to the occupational disease in the course of employment, *L.* 1924, *c.* 124, § 22(e) (codified as amended at *N.J.S.A.* 34:15–34), and also provided that no compensation would be payable unless notice that the employee has contracted a compensable occupational disease was provided to the employer "within a period of five months after the date when said employee shall have ceased to be subject to exposure to such occupational disease." *L.* 1924, *c.* 124, § 22(d) (codified as amended at *N.J.S.A.* 34:15–33).

A 1948 amendment to the Act modified both the notice provision and the time limitation for filing occupational disease claims. *L.* 1948, *c.* 468 (codified at *N.J.S.A.* 34:15–33, –34). Under the 1948 amendment, claims are required to be filed within two years after the employee ceased to be exposed to the occupational disease in the course of employment, or within one year after the employee knows or should know the nature of his disability and its relation to his employment, whichever is later. *N.J.S.A.* 34:15–34. Similarly, the amended notice provision required notice to the employer within five months after the employee ceased to be exposed to the disease or "within ninety days after the employee knew or ought to have known the nature of his disability and its relation to his employment," whichever is later. *N.J.S.A.* 34:15–33. The statement accompanying the 1948 amendment when presented to the Senate, although focusing on the reason for extending the filing period for occupational disease claims, also explains the Legislature's rationale for modifying the notice requirement:

The present workmen's compensation act in New Jersey provides that compensation for an occupational disease is forever barred unless the claim for such compensation is filed within one year after the employee ceased to be exposed, in

the course of employment, to the occupational disease. Thus, our workmen's compensation act fails to recognize the established fact that some occupational diseases have not become manifest until a considerably longer time than one year after cessation of the exposure. The essential purpose of this bill is to extend the statutory limitation period in an equitable and reasonable manner and, thereby, to establish in New Jersey a progressive policy in this matter comparable to that in New York, Wisconsin and other States.

[*Statement to Senate Bill No. 306* (Apr. 26, 1948).]

It is generally acknowledged that the two primary objectives of the notification requirement are: (1) to afford the employer a timely opportunity to investigate the claim when the facts remain accessible; (2) to enable the employer to provide medical care in order to minimize the employee's injury. *See Bucuk v. Edward A. Zusi Brass Foundry,* 49 *N.J.Super.* 187, 199, 139 *A.*2d 436 (App. Div.), *certif. denied,* 27 *N.J.* 398, 143 *A.*2d 9 (1958); Arthur Larson, 2B *Workmen's Compensation Law* § 78.10 at 102 (1990).

Although the question whether lack of prejudice to the employer can excuse noncompliance with the notice requirement of section 33 has not previously been decided, our courts apparently have assumed that failure to prove that the employee complied with the statutory notice requirement, or that the employer had knowledge of the employee's occupational disease, results in an absolute bar to compensation. As a result, courts generally have been rather lenient in finding compliance with either the notice or knowledge requirement. *See Gamon Meter Co. v. Sims,* 114 *N.J.L.* 590, 593–94, 178 *A.* 92 (Sup.Ct.1935) (holding actual knowledge requirement fulfilled by employer's observation during course of employment that employee manifested unmistakable symptoms of chronic lead poisoning); *A. Fishman Hat Co. v. Rosen,* 6 *N.J.Misc.* 667, 669, 142 *A.* 559 (Sup.Ct.1928), (holding that notice from examining physician to employer regarding employee's disability from occupational disease satisfied statutory notice requirement) *aff'd,* 106 *N.J.L.* 567, 146 *A.* 912 (E. & A.1929); *Mitchell v. Mucon Corp.,* 51 *N.J.Super.* 208, 214, 143 *A.*2d 802 (Cty.Ct.1958) (holding employee's report of disability to foreman sufficient to satisfy statutory requirement of actual knowledge by employer); *Roberts v. Beitler,* 34 *N.J.Super.* 470, 476, 112 *A.*2d 797 (Cty.Ct.1955) (rejecting claim

of jurisdictional defect and holding that employee's discussion of dermatological condition with employer during course of employment satisfied statutory actual knowledge requirement); *Calabria v. Martin Dennis Co.*, 63 A.2d 717, 721 (Cty.Ct.1949) (finding that examination of employee by company physician after chrome poisoning was at recognizable stage satisfied knowledge requirement and that letter from employee's counsel claiming compensation for chrome poisoning satisfied notice requirement), *aff'd sub nom. Calabria v. Liberty Mut. Ins. Co.*, 4 N.J.Super. 528, 68 A.2d 283 (App.Div.1949), *aff'd,* 4 N.J. 64, 68, 71 A.2d 550 (1950).

In order to avoid imposition of a jurisdictional bar to compensation benefits, courts pragmatically have applied the statutory notice provision in determining when "the employee knew or ought to have known the nature of his disability and its relation to his employment." *N.J.S.A.* 34:15–33. In *Bucuk, supra,* the claimant, who suffered from silicosis, had been employed for over thirty years as a molder for several different employers. 49 *N.J.Super.* at 191, 139 A.2d 436. After sustaining a back injury while working for his last employer, A.P. Smith Company, Bucuk consulted an attorney experienced in workers' compensation law who advised him to file a compensation claim against that employer to recover benefits for his silicosis-related disability. *Id.* at 191–92, 139 A.2d 436. The Deputy Director of the Division of Workers Compensation dismissed the claim, finding that Bucuk was not exposed to silica during his employment with A.P. Smith Company. *Id.* at 192, 139 A.2d 436. On counsel's advice, Bucuk then served compensation claims on a number of prior employers, including Edward A. Zusi Brass Foundry (Zusi) for whom Bucuk had worked from March 13, 1952, to June 15, 1953. Zusi neither had prior knowledge nor notice of Bucuk's claim for compensation benefits. *Id.* at 192–93, 139 A.2d 436.

The Deputy Director dismissed the petitions against all employers except Zusi, and awarded disability benefits to Bucuk based on his employment with Zusi, concluding that neither the statutory notice or knowledge requirement was a bar to recovery. *Id.* at

193, 139 *A*.2d 436. The County Court reversed, holding that the claim was barred for non-compliance with the statutory notice provision. *Id.* at 194–95, 139 *A*.2d 436. The Appellate Division reinstated the award, holding that the statutory notice period did not begin to run until the Deputy Director dismissed the compensation claim against Bucuk's last employer, A.P. Smith Co., based on lack of exposure, an event that the Appellate Division determined first put Bucuk and his counsel on notice that Zusi might be liable for his silicosis-related disability. *Id.* at 215, 139 *A*.2d 436.

The Appellate Division reached a similar result in *Electronic Associates, Inc. v. Heisinger,* 111 *N.J.Super.* 15, 266 *A*.2d 601 (App.Div.1970), a case in which the Division of Workers Compensation dismissed the employee's petition for failure to comply with the statutory notice requirement, and the County Court reversed the Division and remanded the matter to fix the amount of the award. The employee worked for Electronic Associates, Inc., for approximately one year. Her job entailed the manual placement of wires in circuit banks and involved considerable stress on both wrists. *Id.* at 18, 266 *A*.2d 601. In January 1968, about two months after terminating her employment, she had surgery on her right wrist to relieve a carpal tunnel syndrome condition. When she experienced similar symptoms in her left hand, a second surgical procedure to address that condition was performed in June 1968. On September 12, 1968, she consulted counsel who immediately wrote to the employer and provided notice of the employee's intention to seek compensation for her work-related disability. *Ibid.* Although the employer acknowledged that the disability arose out of petitioner's employment, it contended that she ought to have known that her disability was work-related by the time of the second operation, with the result that the date of notice was beyond the statutory ninety-day period. *Ibid.* The Appellate Division, however, agreed with the County Court that the notice was timely because the petitioner was unaware of the relationship between her disability and her employment until she consulted with counsel, noting that "nothing in the testimony indicates that petitioner's disability was of such a general occupa-

tional character that its prevalence might make the employee apt to realize she had a compensable condition." *Id.* at 19, 266 *A.*2d 601. The court observed that the statutory notice requirement should be "construed and applied in the light of petitioner's particular background, intelligence, experience, and the character of her disability," and in the context of the "humane" objectives of the Act. *Ibid.* The court concluded:

Nothing in that legislation dictates that, under the circumstances of this case, petitioner should be deprived of the statutory benefits. Particularly is this so because the employer does not dispute that petitioner's disability is work-connected nor attribute any prejudice to the failure to receive the notice at an earlier date.

[*Ibid.*]

As we have indicated, *supra* at 381, 693 *A.*2d at 896, the Appellate Division majority took note of out-of-state decisions that excused failure to provide the required statutory notice wholly or in part on the basis of lack of prejudice to the employer, observing that those decisions invariably are based on statutes that specifically authorize consideration of prejudice to the employer. 290 *N.J.Super.* at 226, 675 *A.*2d 668. *See Bethlehem Steel Co. v. Parker*, 72 *F.Supp.* 35, 36 (D.Md.), *aff'd*, 163 *F.*2d 334 (4th Cir.1947) (applying Longshoremen's and Harbor Workers' Compensation Act); *Argonaut Mining Co. v. Industrial Accident Comm'n*, 21 *Cal.App.*2d 492, 70 *P.*2d 216, 221 (1937); *Dawson v. Hartwick*, 91 *Idaho* 561, 428 *P.*2d 480, 490 (1967); *Atlantic & Pacific Tea Co. v. Industrial Comm'n*, 67 *Ill.*2d 137, 7 *Ill.Dec.* 96, 99, 364 *N.E.*2d 83, 86 (1977); *Gales v. Peter Kiewit Sons' Co.*, 184 *Kan.* 573, 337 *P.*2d 669, 671–72 (1959); *Smith v. Phoenix Assurance Co.*, 231 *So.*2d 733, 734 (La.Ct.App.), *writ refused*, 255 *La.* 1102, 234 *So.*2d 195 (1970); *Snow v. Hicks Bros. Chevrolet, Inc.*, 480 *S.W.*2d 97, 101–02 (Mo.Ct.App.1972); *DeCarlo v. Bergamini*, 16 *A.D.*2d 1001, 229 *N.Y.S.*2d 276, 278–79 (1962).

The general rule prevailing in other jurisdictions is that a statutory requirement of notice to the employer is jurisdictional, and noncompliance results in a bar to compensation. *See, e.g., Ferguson v. Industrial Comm'n*, 397 *Ill.* 348, 74 *N.E.*2d 539, 540–41 (1947); *Mozley v. American Gen. Ins. Co.*, 324 *S.W.*2d 925, 927

(Tex.Civ.App.1959); *Scott v. Texas Employers' Ins. Ass'n,* 118 *S.W.*2d 354, 356 (Tex.Civ.App.1938). Some courts specifically have stated or implied that, absent statutory authorization, an employee's failure to comply with a statutory notice requirement will not be excused on the basis of proof that the employer sustained no prejudice. *Farrow v. Carr Bros. Co., Inc.,* 393 *A.*2d 1341, 1345 (Me.1978); *Podkastelnea v. Michigan Cent. R.R. Co.,* 198 *Mich.* 321, 164 *N.W.* 418, 420 (1917); *Ramos v. Production Steel,* 87 *Mich.App.* 30, 273 *N.W.*2d 578, 581 n. 2 (1978).

A sharp contrast exists between the provisions of *N.J.S.A.* 34:15–33 and those of other state statutes that expressly excuse noncompliance with a notice requirement if an employer is unable to demonstrate prejudice. *See, e.g., Cal. Liab.Code* § 5403 (West 1997) ("The failure to give notice under section 5400, or any defect or inaccuracy in a notice is not a bar to recovery under this division if it is found as a fact in the proceedings for the collection of the claim that the employer was not in fact misled or prejudiced by such failure."); *Conn. Gen.Stat. Ann.* § 31–294c(c) (West 1995) ("No defect or inaccuracy of notice of claim shall bar maintenance of proceedings unless the employer shows that he was ignorant of the facts concerning the personal injury and was prejudiced by the defect or inaccuracy of the notice."); *Ga.Code Ann.* § 34–9–80 (1996) ("No compensation will be payable ... unless a reasonable excuse is made to the satisfaction of the board for not giving such notice and it is reasonably proved to the satisfaction of the board that the employer had not been prejudiced thereby."); *Haw.Rev. Stat.* § 386–81 (1996) ("Failure to give such notice shall not bar a claim under this chapter if ... for some satisfactory reason notice could not be given and the employer has not been prejudiced by such failure.").

## III

The rationale for the Appellate Division majority opinion's conclusion that lack of employer prejudice should excuse compliance with the notice requirement is logical and forceful:

> To carry out the legislative intent, it is clear that the notice provision must be strictly construed where prejudice to an employer can be shown to have flowed from want of notice. On the other hand, no legislative intent that we can discern would be served by barring the claim of an employee with a compensable occupational disease for failing to give timely notice to an employer whose rights are in no way prejudiced thereby. Indeed such an interpretation seems to us to fly in the face of the well-established principle that the Workers' Compensation Act is social legislation which is to be liberally construed to achieve its humane purposes.

[290 *N.J.Super.* at 227, 675 *A.*2d 668.]

Had the Legislature seen fit to incorporate a prerequisite of prejudice into the notice statute, that legislative judgment would have been soundly based and consistent with that of sister states whose statutes excuse late notice if no prejudice occurs. Although the Legislature's omission of any reference to prejudice may have been inadvertent, we find that inference to be an unlikely one. That the drafters were unaware that a number of other state statutes specifically include references to employer prejudice is improbable. Moreover, as the Appellate Division's dissenting member observed, *N.J.S.A.* 34:15–17, the original statutory provision requiring notice to employers of workplace injuries, specifically allows an employer to contest compensation based on justifiably late notice provided between fourteen and ninety days after the injury only to the extent that the employer can demonstrate prejudice arising from such late notice. 290 *N.J.Super.* at 229–30, 675 *A.*2d 668 (Loftus, J.A.D., dissenting). *N.J.S.A.* 34:15–17 demonstrates a clear legislative awareness of the relationship between employer prejudice and the statutory requirement that notice of compensable claims be provided to employers. In our view, the inference is compelling that the omission of any reference to employer prejudice in *N.J.S.A.* 34:15–33 reflects a deliberate legislative choice to exclude employer prejudice as a factor in prescribing the consequences of non-compliance with the statutory notice requirement controlling compensation claims for occupational disease. Of course, if we misread the Legislature's intention the Legislature may act to amend the statute and clarify its objectives.

Our purpose is simply to attempt to derive the intent of the Legislature from the statutory language. *GE Solid State, Inc. v. Director, Div. of Taxation,* 132 *N.J.* 298, 307, 625 *A.*2d 468 (1993). When the statutory language is not unclear or obscure, and no ambiguity may be inferred from related legislation or other circumstances, a court ordinarily should apply the statute as written. *Ocean Pines, Ltd. v. Borough of Pt. Pleasant,* 112 *N.J.* 1, 7, 547 *A.*2d 691 (1988); *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). Accordingly, we conclude that the absence of proof of employer prejudice does not excuse an employee's noncompliance with the notice requirement of *N.J.S.A.* 34:15–33.

On this record, it is incontrovertible that Brock knew or should have known of the nature of his disability and its relation to his employment with PSE & G in November 1989 when he received the letter from the pulmonary internist reporting that he suffered from pleural asbestosis. No notice of Brock's claim for compensation for that condition was provided to PSE & G until October 23, 1991, when Brock's claim petition was filed. Accordingly, unless otherwise excused, Brock's failure to provide PSE & G with the required statutory notice that he had developed a compensable occupational disease mandates dismissal of his compensation claim.

## IV

During oral argument before this Court, respondent's counsel raised for the first time the contention that documents in the record could support a finding that PSE & G had actual knowledge that Brock had contracted a compensable occupational disease. That issue, of course, was not before us, PSE & G's appeal as of right being limited only to the issue in respect of which the dissent was filed. *See* Pressler, *Current N.J. Court Rules,* comment 2 on *R.* 2:2–1. Nor has the issue been illuminated by counsel's post-argument submissions. Accordingly, we decline to address it, see *Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973), and remand the matter to the Workers'

Compensation court to consider and resolve respondent's contention that PSE & G possessed actual knowledge that Brock had developed a compensable occupational disease.

Reversed and remanded.

*For reversal and remandment*—Chief Justice PORITZ, and Justices HANDLER, O'HERN, STEIN and COLEMAN—5.

*Opposed*—None.