## GOWER *v.* DEPARTMENT OF CONSERVATION.

1. WORKMEN'S   COMPENSATION—NOTICE   OF   INJURY—CONDITION
   PRECEDENT.
   Requirement of workmen's compensation act that employer
   have notice of the injury within three months of its occur-
   rence is a substantial right and not one to be disregarded as
   a condition precedent to the establishment of a claim for
   compensation (2 Comp. Laws 1929, § 8431, as amended by
   Act No. 245, Pub. Acts 1943; §§ 8432, 8434).

2. SAME—SUFFICIENCY OF VERBAL NOTICE OF INJURY.
   While a verbal notice of an injury meets the requirements of
   the workmen's compensation act, the notice must comply in
   all respects with the requirements of a written notice and
   show the time, place and cause of the injury (2 Comp. Laws
   1929, § 8431, as amended by Act No. 245, Pub. Acts 1943;
   §§ 8432, 8434).

3. SAME—TULAREMIA—NOTICE OF INJURY—RECORD.
   In dependents' proceeding to recover workmen's compensation
   for death of defendant's employee from tularemia, alleged
   to have been contracted while examining diseased rabbit's
   liver, record failed to disclose any competent evidence that
   employer or its agent had any notice within three months of
   the injury that plaintiffs' decedent had suffered a compensable
   injury (2 Comp. Laws 1929, § 8431, as amended by Act
   No. 245, Pub. Acts 1943; §§ 8432, 8434).

BUTZEL, BUSHNELL, and REID, JJ., dissenting.

Appeal from Department of Labor and Industry.
Submitted October 10, 1946. (Docket No. 46, Cal-
endar No. 43,456.) Decided April 8, 1947. Rehear-
ing denied May 16, 1947.

Mrs. William C. Gower and minor children presented their claim against Department of Conservation, employer,. and State Accident Fund, insurer, for compensation for death of husband and father while in its employ. Award to plaintiffs. Defendants appeal. Reversed.

*Warner & Hart,* for plaintiffs.

· *Harry F. Briggs* (*Roy Andrus,* of counsel), for defendants.

· SHARPE, J. Plaintiff Mrs. William C. Gower is the widow of Dr. William C. Gower who died February 5, 1945. An autopsy was performed on the body of Dr. Gower by Dr. Charles E. Black, pathologist. After the autopsy the immediate cause of Dr. Gower's death was certified as acute cardiac dilatation and contributory causes as pulmonary infarcts and pleurisy with effusion.

In 1937, Dr. Gower started working for the department of conservation. Part of his duties consisted of office work and the other part of laboratory work. The department of conservation has a laboratory at Michigan State College where Dr. Gower occasionally worked.

On January 6, 1945, Dr. Gower was seen examining the liver of a rabbit in the laboratory at the college. On January 7, 1945, his nose seemed to be running. He worked on January 8, 1945, but on coming home he complained of a pain in his chest. He remained at home until the middle of the afternoon of January 11, 1945, when he went to his office at the State office building. He worked there on Friday, January 12th, but remained at home January 13th and until he entered the hospital January 18th, where he remained until February 5th.

Upon being. discharged. from the hospital, he was driven home by his wife, ate lunch and supper at home, and died the same day about 7 p.m. While at the hospital he was attended by Dr. Dorothy Dart and Dr. C. J. Stringer.

Sometime in March, Mrs. Gower asked Mr. Ruhl, her husband's superior, if it would be all right if she made application to the retirement fund for benefits. She also told Mr. Ruhl that she thought her husband's death was in some manner associated with his employment. Later, she conferred with Dr. Black. In August, Dr. Black completed a further investigation into the death of Dr. Gower and concluded that Dr. Gower's death was caused by tularemia of the typhoid type. On August 25, 1945, Dr. Black made a supplemental autopsy report, in which he set forth that subsequent studies and investigations indicate the primary cause of death was due to a septicemic type of tularemia. Dr. Dart also made a supplemental report in which tularemia was added to the contributory cause of death.

On October 15, 1945, Mr. Southworth filed with the department of labor and industry an employer's basic report of industrial injury, the information for which was supplied by Mrs. Gower. On October 18, 1945, plaintiffs filed an application for hearing and adjustment of claim based on a personal injury of January 6, 1945, and alleging that Dr. Gower in the course of his work requiring autopsy of diseased animals and tissue became infected with tularemia.

On October 29, 1945, defendants filed an answer denying that deceased received an accidental personal injury arising out of and in the course of his employment; denying that his death was the result of a personal injury arising out of and in the course of his employment; and denying that the depart-

ment of conservation had notice or knowledge of a personal injury within the statutory period.

The department of labor and industry made the following finding:

"We find Dr. William C. Gower sustained a personal injury arising out of and in the course of his employment on January 6, 1945 when he came in contact with the liver of a rabbit infected with tularemia. We further find that Dr. Gower's death on February 5, 1945 resulted from that personal injury. We further find that defendant employer had notice and knowledge that the plaintiff, Mrs. Gower, was claiming that her husband sustained a personal injury, within 90 days of that occurrence. We further find that Mrs. Gower presented to the employer through Mr. Ruhl, all the available information she had at that time which was all that she could do and by so doing did satisfy the notice requirement of section 15 of part 2 of the compensation act.* We further find that defendant employer may not be charged with the medical and hospital expenses incurred for Dr. Gower's last illness for the reason the employer was not given an opportunity to furnish such services. Plaintiff is entitled to compensation of $23 per week for total dependency for her use and the use and benefit of the two minor children, Carol Janis and Gail Linda, for a period not to exceed 400 weeks from February 5, 1945. Plaintiff is also entitled to be reimbursed in the sum of $300, the statutory allowance for funeral expenses."

Defendants appeal. Plaintiffs urge that the department's finding that defendants had notice and knowledge that Mrs. Gower claimed her husband sustained a personal injury within 90 days after that occurrence is supported by competent evidence.

---

* 2 Comp. Laws 1929, § 8431, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8431, Stat. Ann. 1946 Cum. Supp. § 17.165).—REPORTER.

It appears that Mrs. Gower talked to Mr. Ruhl in March, 1945, about making an application to the retirement board for benefits under that act (Act No. 240, Pub. Acts 1943, as amended [Comp. Laws Supp. 1945, § 402–41 *et seq.,* Stat. Ann. 1946 Cum. Supp. § 3.981 (1) *et seq.*]). Upon examination, she testified as follows:

"*Q.* Well, I am asking you now about any conversation you had with Mr. Ruhl about any claim for your husband's death. Did you have such—

"*A.* Yes.

"*Q.* And what,—about what month did you have the first of these conversations with Mr. Ruhl?

"*A.* Well, that was,—oh, some time in March.

"*Q.* In March of 1945?

"*A.* That is right.

"*Q.* Within a month after your husband's death?

"*A.* That is right.

"*Q.* And did you make any claim to Mr. Ruhl at that time that your husband's occupation had something to do with his death?

"*A.* Yes, I told him that I wanted to send this in, and he said to go ahead and do it.

"*Q.* Well, you talked to Mr. Ruhl about a claim in what department?

"*A.* In the retirement—

"*Q.* In the retirement fund?

"*A.* Yes.

"*Q.* And was your husband,—had he been paying into the retirement fund?

"*A.* Yes.

"*Q.* And did you know that in order to get benefits under the retirement fund, there had to be a connection between the death and the occupation?

"*A.* Yes, I found out about it.

"*Q.* I see. And then did you talk to Mr. Ruhl about making the claim for you against the retirement fund, or helping you make the claim against the retirement fund?

"*A.* No, I just told him, would it be all right if I did. He said yes, to go ahead and do it. * * *

"*A.* I told Mr. Ruhl that I wanted to apply for this petition,—or from the retirement fund,—retirement board, and I asked about it, and they told me when I could bring proof that his illness and death was caused from his work, then they would listen to me.

"*The Commissioner:* Mr. Ruhl said that to you?

"*A.* No, I talked to Mr. Ruhl about it, and I wrote to the pension board,—retirement pension board, and Mr. Ruhl said to go ahead and do it.

"*The Commissioner:* Well, now, who told you that you should bring proof that your husband—

"*A.* The pension board itself. * * *

"*The Commissioner:* Did you talk to Mr. Ruhl about whether or not your husband's death was due to his work?

"*A.* Yes, I did.

"*The Commissioner:* What did you,—what conversation did you have with Mr. Ruhl about that? Tell us what your conversation was with Mr. Ruhl?

"*A.* Well, I don't recall exactly, but I told him I wanted to apply for it on the strength of that,— that it was through his work that he became ill. * * *

"*The Commissioner:* Now, was there anything said at that time about workmen's compensation?

"*A.* I don't know what you mean by that. I am sorry.

"*The Commissioner:* Well, that is what we are here dealing with now. I mean, was the conversation, then, limited to the retirement fund?

"*A.* Well, I had this retirement fund bulletin, and that is where I thought about this possibility about applying to the pension board,—retirement board.

"*The Commissioner:* I see.

"*A.* I wrote to them and asked them about it, and they said to find cause, and I told Mr. Ruhl that

I wanted to try and find cause, and that is what I did. * * *

"*Q.* Well, let me ask you this: Did you ever talk to Mr. Ruhl about tularemia having anything to do with your husband's death?

"*A.* I told him I thought that, and that it was being checked.

"*Q.* I see. And that was at the same time this other conversation was had, in March?

"*A.* No, it was not then. I didn't know then just exactly—

"*Q.* Well, when was it you talked to him about checking this tularemia,—about when, not the exact day and hour, but within 60 days, or 90 days, or what?

"*A.* Well, I don't recall that, when—just when I did.

"*Q.* Well, this first basic report of the employer was filed with the department of labor and industry October 15, 1945. Would it be before that?

"*A.* Yes.

"*Q.* And do you know how long before that? Three months, six months, or what is your best judgment?

"*A.* Well, as soon as I had a report on the verification, I showed him that report. And he said then again to go ahead and take care of it and see.

"*Q.* Well, would that be in June or July of 1945, witness, that you had this conversation with him?

"*A.* No, it was in August.

"*Q.* August?

"*A.* Yes, in August."

The pertinent sections of the compensation act, Act No. 10, Pub. Acts 1912, as last amended by Act No. 245, Pub. Acts 1943, pertaining to notice appear in part 2 thereof and read as follows:

"Sec. 15. No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury shall have been given to the

employer within 3 months after the happening thereof. * * * *And provided further,* That in all cases in which the employer has been given notice of the happening of the injury, or has notice or knowledge of the happening of said accident within 3 months after the happening of the same, and fails, neglects or refuses to report said injury to the compensation commission as required by the provisions of this act, the statute of limitations shall not run against the claim of the injured employee or his dependents, or in favor of either said employer or his insurer, until a report of said injury shall have been filed with the compensation commission." (Comp. Laws Supp. 1945, § 8431, Stat. Ann. 1946 Cum. Supp. § 17.165.)

"Sec. 16. The said notice shall be in writing, and shall state in ordinary language the time, place and cause of the injury; and shall be signed by the person injured, or by a person in his behalf, or, in event of his death, by his dependents or by a person in their behalf." (2 Comp. Laws 1929, § 8432 [Stat. Ann. § 17.166].)

"Sec. 18. A notice given under the provisions of this act shall not be held invalid or insufficient by reason of any inaccuracy in stating the time, place or cause of the injury, unless it is shown that it was the intention to mislead, and the employer, or the insurance company carrying such risk, or the commissioner of insurance, as the case may be, was in fact misled thereby. Want of such written notice shall not be a bar to proceedings under this act, if it be shown that the employer had notice or knowledge of the injury." (2 Comp. Laws 1929, § 8434 [Stat. Ann. § 17.168].)

In *Maki* v. *S. J. Groves & Sons,* 279 Mich. 644, we said:

"The requirement of the statute that the employer must receive notice of the accidental injury

within three months of its occurrence is a substantial right and not one to be disregarded. *Ames* v. *Lake Independence Lumber Co.,* 226 Mich. 83 (23 N. C. C. A. 778); *Podkastelnea* v. *Railroad Co.,* 198 Mich. 321; *Herbert* v. *Railway Co.,* 200 Mich. 566; *Gumtow* v. *Kalamazoo Motor Express,* 266 Mich. 16.''

See, also, *Clifton v. Chrysler Corporation,* 287 Mich. 87.

While a verbal notice of accidental injury meets the requirements of the statute, it must comply in all respects with the requirements of a written notice.

In *Littleton* v. *Grand Trunk Railway Company, Inc.,* 276 Mich. 41, we said:

''Obviously, plaintiff cannot recover if proper notice was not given within three months and a claim for compensation made within six months after the accident, unless defendant had notice or knowledge of the accident and failed to make a report to the department. See 2 Comp. Laws 1929, § 8431. There is no showing that defendant had either such notice or knowledge. In his conversation with Howison, plaintiff only stated that he wondered whether the bump he received from a machine the day before Thanksgiving had anything to do with him not feeling well. He gave no details of the accident or how or where he was bumped. It was not such a notice as would reasonably put an employer on inquiry. The provisions of the law that timely notice must be given is purposeful and while no niceties of expression are required and the notice may be oral or written, it must be of such a nature so as reasonably to inform the employer that the employee has sustained a compensable accident; it requires more than a casual conversation in which the employee states that he is not feeling well and expresses his wonder whether it was caused by an injury, of which the

détails are lacking. The purpose of the notice is to give the employer an opportunity to examine into the alleged accident and injury while the facts are accessible and also to. employ skilled physicians or surgeons to care for the employee so as to speed his recovery and minimize the loss. See *Podkastelnea v. Railroad Co.*, 198 Mich. 321; *Herbert v. Railway Co.*, 200 Mich. 566; *Johnson v. Bergland Lumber Co.*, 231 Mich. 34."

In *Gumtow v. ·Kalamazoo Motor Express*, 266 Mich. 16, we said:

"The notice required to be given to the employer is notice of an accidental injury arising out of and in the course of employment. * ,* * Although there is no doubt but that the latter [the owner of the defendant company] knew that the plaintiff took sick on the trip, and was ill for a considerable period thereafter, and also was aware of the condition of plaintiff's hand and arm [plaintiff having testified he injured his hand while changing a tire on defendant's truck], a careful review of the entire testimony shows beyond any question that the employer had no knowledge that there had been an accident until some time in February, more than three months later. While it is true that the act is to be liberally construed in favor of the employee, and in so doing we have gone far in disregarding inaccuracies in notice, * * * we cannot disregard the plain requirement of the statute that the employer must receive notice of the accident within the three-months' period. This is a substantial right and, as stated in the act, is a condition precedent to the establishment of a claim for compensation."

The above cases were all decided prior to the occupational disease amendment (Act No. 61, Pub. Acts 1937) and hold that the notice of injury should contain such information. as the law intends, which is outlined in part 2, § 16 of the act, *i.e.*, "time, place

and cause of the injury." It must be more than a general statement that the employee suffered an injury.

In the case at bar, plaintiffs seek compensation upon the theory of a personal injury to deceased, hence we do not find it necessary to discuss cases growing out of occupational diseases.

Plaintiffs rely upon *Mauch* v. *Bennett & Brown Lumber Co.*, 235 Mich. 496. In that case plaintiff bruised his toe on a canthook and thereafter the toe became frozen. Within the statutory period plaintiff gave his employer notice of the freezing, but failed to give notice of the injury to the toe. We there said:

"In such notice as the plaintiff gave to his employer during the period of three months he spoke of the result rather than the cause of his injury—of the consequence of the accident rather than of the accident itself. Such notice was inaccurate. But accuracy and nicety of statement are not required imperatively. The importance of the notice of injury is that the employer may have opportunity for investigation while the facts are accessible. *Armstrong* v. *Oakland Vinegar & Pickle Co.*, 197 Mich. 334. The mere freezing was not an accident. *Sherman* v. *Flint Spring Water Ice Co.*, 229 Mich. 648. But, while the plaintiff's notice of injury was inaccurate, the employer had notice that plaintiff claimed of the freezing an accidental personal injury under the act and sought compensation therefor; in effect, that it was fortuitous, accidental. It was at least sufficient to put the employer on inquiry. If the employer was harmed by the inaccuracy he has the burden of showing it. *Pardeick* v. *Iron City Engineering Co.*, 220 Mich. 653. There is no such showing. In these circumstances, the department, in treating the employer as having had sufficient notice of injury, must be sustained."

We do not think this case is controlling. While freezing of a toe is not compensable, yet the notice of such freezing was definite enough to put the employer on inquiry and thereby ascertain all facts concerning the injury to the toe which had happened prior to the freezing.

In *LaPorte* v. *Kalamazoo Stove & Furnace Co.*, 308 Mich. 687, also relied upon by plaintiffs, the injured party notified the company nurse that he was blind in his left eye and that such injury was due to his employment. In this case the company had timely notice of a particular injury as well as the claim that it was due to his employment.

In the case at bar, Dr. Gower died February 5, 1945. In March, 1945, Mrs. Gower consulted Mr. Ruhl about making an application to the retirement fund for benefits. In June she talked with Dr. Black at which time some mention was made of tularemia. In August, 1945, Dr. Black made a supplemental autopsy report in which he attributed tularemia as a cause of death. In August Mrs. Gower again talked with Mr. Ruhl about a retirement pension. At the hearing she testified as follows:

"*The Commissioner:* Did you talk to Mr. Ruhl about whether or not your husband's death was due to his work?

"*A.* Yes, I did.

"*Q.* * * * What conversation did you have with Mr. Ruhl about that? * * *

"*A.* Well, I don't recall exactly, but I told him I wanted to apply for it on the strength of that,— that it was through his work that he became ill."

In coming to our conclusion in this case we do not determine that the type of injury is covered by the 1943 amendment to the act. We fail to find any competent evidence that Mrs. Gower complied with

the statutory requirements in the giving of notice, nor is there any competent evidence that the employer or agent in authority had knowledge within three months that plaintiffs' decedent suffered a compensable injury. There is no evidence that the employer knew that deceased was working in the laboratory on January 6, 1945. There was no claim made to the employer for medical or hospital services until plaintiffs filed their application for compensation. The subject of tularemia was first mentioned to the employer in August, 1945. We are unable to find that the employer had knowledge of a compensable injury to deceased within the statutory period.

The award is vacated, with costs to defendants.

CARR, C. J., and BOYLES, NORTH, and DETHMERS, JJ., concurred with SHARPE, J.

BUSHNELL, J. (*dissenting*). Can we conclude as a matter of law that the department of conservation did not have the required notice when a finding was made by the department of labor and industry that such notice had been given?

We have held unequivocally that:

"The question of the giving of timely and sufficient notice is one of fact." *LaPorte* v. *Kalamazoo Stove & Furnace Co.*, 308 Mich. 687, 691.

In applying the statutory requirements regarding notice of the injury (2 Comp. Laws 1929, § 8431 *et seq.*, as amended by Act No. 245, Pub. Acts 1943 [Comp. Laws Supp. 1945, § 8431, Stat. Ann. and Stat. Ann. 1946 Cum. Supp. § 17.165 *et seq.*]), we must at the same time remember that the legislature provided in part 2, § 18 of the workmen's compen-

sation act (2 Comp. Laws 1929, § 8434, Stat. Ann. § 17.168), for such contingencies as are presented in the instant case.  That section reads:

"A notice given under the provisions of this act shall not be held invalid or insufficient by reason of any inaccuracy in stating the time, place or cause of the injury, unless it is shown that it was the intention to mislead, and the employer, or the insurance company carrying such risk, or the commissioner of insurance, as the case may be, was in fact misled thereby.  Want of such written notice shall not be a bar to proceedings under this act, if it is shown that the employer had notice or knowledge of the injury."

See *Mauch* v. *Bennett & Brown Lumber Co.*, 235 Mich. 496.

Nor may we in any event disturb an award of the department, based upon testimony as to the facts; the department's findings of fact as to notice of injury are conclusive when supported by evidence. *Monk* v. *Charcoal Iron Co. of America,* 246 Mich. 193; *Hajduk* v. *Revere Copper & Brass, Inc.*, 268 Mich. 220; *Quimby* v. *Lennon Gravel Co.*, 270 Mich. 493; *Badarak* v. *Ford Motor Co.*, 281 Mich. 53; and *McIntyre* v. *Bohn Aluminum & Brass Co.*, 285 Mich. 526.

It is difficult to read the testimony quoted in Mr. Justice Sharpe's opinion without being impressed with the fact that Mrs. Gower apprised her husband's superior that Dr. Gower's death was in some manner connected with his employment.  This testimony bears the indicia of truthfulness and fairness and contains, without any doubt, an accurate account of all the information that could have been furnished to the employer at the time.  It would have been impossible for Mrs. Gower to give notice of an injury that would have been more definite

in view of the first autopsy. After a second autopsy on August 25, 1945, it was discovered that the primary cause of the death of Dr. Gower was tularemia. The conclusion is inescapable that this rare disease was contracted by Dr. Gower on January 6, 1945, when, in the performance of his duties, he examined the liver of a diseased rabbit.

In the opinion, which proposes a contrary result, reliance is placed on *Littleton* v. *Grand Trunk Railway Company, Inc.,* 276 Mich. 41; *Maki* v. *S. J. Groves & Sons,* 279 Mich. 644; and *Clifton* v. *Chrysler Corporation,* 287 Mich. 87.

In the *Littleton Case* the only notice claimed was a casual conversation between the claimant and a foreman, which conversation was denied by the latter. Although we accepted the finding of the department that there was such a conversation, we said:

It [the statute] requires more than a casual conversation in which the employee states that he is not feeling well and expresses his wonder whether it was caused by an injury, of which the details are lacking.''

In the *Maki Case* an attempt was made to infer that a notice had been given, from the circumstances of the case. This was held to be improper, because there was no evidence in the sequence of events which rose to the dignity of notice.

In the *Clifton Case* there was nothing to prevent the employee from giving proper notice within the statutory period. However, there was no testimony in that record to sustain a determination that such notice had been given.

This Court discussed the sufficiency of the notice in a comparable case, saying in *Nicholas* v. *St. Johns Table Co.,* 302 Mich. 503, 516:

"Plaintiff interviewed an official of defendant employer May 6, 1940, after his condition had been diagnosed by the physicians at Ann Arbor. Plaintiff asked this official whether he had any claim in the nature of compensation and he received the reply that he saw none available because he did not think there was the 'stuff in the finishing room.' This official, though present at the hearing, did not take the stand. The reference to the 'stuff in the finishing room' demonstrates that the official had knowledge of the fact that the plaintiff attributed his condition to a substance in the room in which he had worked, and, therefore, the defendant employer cannot successfully claim in this case, as claimed by the employer in *Gumtow* v. *Kalamazoo Motor Express*, 266 Mich. 16, that, although informed of plaintiff's condition, the employer was not told that it arose out of and in the course of his employment."

Authorities regarding the requirements of the workmen's compensation law as to notice of injury are collected in 107 A. L. R. p. 815 *et seq.*

In the case of *Consumers Company* v. *Industrial Commission*, 364 Ill. 145 (4 N. E. [2d] 34, 107 A. L. R. 811) the court observed the following:

"The record discloses that the widow talked to the employer about the possibility of accidental drowning, and this came as near to being a notice as it was possible for one person to give another under the circumstances. It may have been very defective and inaccurate as a notice—it was undoubtedly a mere conjecture—but the facts were as apparent to one of the parties as to the other, and the employer was in no way prejudiced by the defect or inaccuracy, no matter how great."

See, also, *Duvall* v. *Ford Motor Co.*, 288 Mich. 348.

In the instant case, notice was given to decedent's superior within the statutory period, sufficient to put the employer upon inquiry. There is evidence

to support the department's finding of fact that notice was given, and we are not at liberty to disturb an award based upon that factual finding. The award should be affirmed, with costs to appellees.

Butzel and Reid, JJ., concurred with Bushnell, J.