## LITWIN v. DIFCO LABORATORIES, INC.

### Opinion of the Court

1. Workmen's Compensation—Appeal and Error—Standard of Review.

    An appellate court's inquiry on an appeal from the Workmen's Compensation Appeal Board is limited to a consideration of whether there is any evidence whatever to support the board's determination.

2. Workmen's Compensation — Evidence — Witnesses — Medical Witnesses — Appeal and Error.

    Evidence by the workmen's compensation claimant's physician witness that claimant's disabled condition resulted from brucellosis was sufficient to support the Workmen's Compensation Appeal Board's finding that the claimant was disabled by brucellosis, even though a medical witness called by the claimant's employer stated that the claimant's disability was caused by anemia.

3. Workmen's Compensation—Total Disability—Brucellosis—Evidence.

    Evidence that workmen's compensation claimant had worked for nine and one-half months after having contracted brucellosis and then quit work and was hospitalized for a month was sufficient to support the Workmen's Compensation Appeal Board's determination that the claimant was totally disabled from working because of the effects of brucella organisms.

4. Workmen's Compensation—Brucellosis—Recovery—Evidence—Appeal and Error.

    Workmen's Compensation Appeal Board's decision that the claimant had not recovered from disability due to brucellosis was

---

References for Points in Headnotes

[1] 58 Am Jur, Workmen's Compensation § 530 et seq.
[2–4] 58 Am Jur, Workmen's Compensation § 532.
[5, 6] 58 Am Jur, Workmen's Compensation § 534.

not erroneous where there was an absence of evidence showing a negative titer six months after completion of therapy.

5. WORKMEN'S COMPENSATION—BRUCELLOSIS—DATE OF INJURY—OCCUPATIONAL DISEASES.

Workmen's Compensation Appeal Board's determination that the date the claimant incurred brucellosis was not the last day of her employment was proper where the claimant did not contend that her contraction of brucellosis was like the contraction of typical occupational diseases, in that it was not attributable to a single event (MCLA § 412.1).

DISSENT BY GILLIS, J.

6. WORKMEN'S COMPENSATION—TERMINATION OF BENEFITS—EVIDENCE—BRUCELLOSIS.

*Claimant was no longer entitled to workmen's compensation benefits, being paid to her for disability caused by brucellosis, even though the claimant's physician stated that the claimant should have re-examinations for brucellosis where the physician also testified that the claimant had recovered from brucellosis and that she would certainly not be incapacitated further because of it, because as shown by the doctor's testimony, although re-examinations should be made of a person who once had brucellosis, the advisability of re-examinations does not denote that the patient has any residual effects from brucellosis.*

Appeal from Workmen's Compensation Appeal Board. Submitted Division 1 February 4, 1970, at Detroit. (Docket No. 6,827.) Decided November 30, 1970.

Geraldine Litwin presented her claim for workmen's compensation against Difco Laboratories, Inc., and Michigan Mutual Liability Company, its insurer. Referee's award to plaintiff affirmed in part and reversed in part by Workmen's Compensation Appeal Board. Plaintiff and defendants appeal. Affirmed.

*Kelly & Tatham,* for plaintiff.

*LeVasseur, Werner, Mitseff & Brown,* for defendants.

Before: Levin, P. J., and J. H. Gillis and Bronson, JJ.

Levin, P. J. The plaintiff, Geraldine Litwin, contracted brucellosis (undulant fever) while employed in the serology laboratory of the defendant Difco Laboratories, Inc. She was off work for seven weeks beginning February 13, 1962 and Difco voluntarily paid her workmen's compensation benefits. She returned to work and remained in Difco's employ until August 9, 1963 when she left because of the imminent birth of her baby, born September 27, 1963.

She filed an application for compensation on November 4, 1965. The referee found that she sustained a personal injury on February 9, 1962 and awarded compensation of $33 per week for total disability, based on an average weekly wage of $85.04 in unskilled labor with no dependents. The referee's order required that compensation be paid during

(1) the period of voluntary compensation in 1962, and

(2) the period between November 4, 1964 and the date, February 6, 1966, preceding the date she obtained new employment, and

(3) the period beginning November 28, 1966 (a few days after the date, November 25, 1966, on which the period of renewed employment terminated) and ending on the date preceding the date, December 30, 1966, he made his findings, and

(4) the period beginning the date he made his findings, December 30, 1966, until the further order of the department.

The Workmen's Compensation Appeal Board in the main affirmed the referee's findings; however, it reversed so much of his determination as allowed compensation for the period November 4, 1964 through February 6, 1966.

Difco appeals, contending that the finding that Mrs. Litwin was disabled from working and entitled to weekly benefits from November 28, 1966 until the further order of the department is not supported by competent evidence.

Mrs. Litwin cross-appeals, claiming that the appeal board erred

(a) in finding that she was not entitled to compensation from November 4, 1964 through February 6, 1966,

(b) in finding that her work was unskilled labor and in denying her claim for partial benefits as skilled labor while she was working at lower wages during the period February 7, 1966 through November 25, 1966, and

(c) in failing to find that the injury was a disease within the meaning of part VII of the act and in determining that the date of injury was February 9, 1962, rather than the last day that she was employed by Difco in August of 1963, by which time her wages had been increased from the $85.04, which she was paid in February 1962, to $106 a week.

We have concluded that the findings of the appeal board are evidentially supported and that its decision is in accordance with the law and, accordingly, we reject both the contentions of Difco and of Mrs. Litwin and affirm.

Upon an appeal from the Workmen's Compensation Appeal Board our inquiry is limited to a con-

sideration of whether there is "any evidence whatever" to support its determination. *Clark* v. *Apex Foundry, Inc.* (1967), 7 Mich App 684, 688.

A physician called by Difco testified that he examined Mrs. Litwin in November 1964 and May 1966, and that, while her brucellosis agglutinations titers were positive, they were not high enough to be disabling, and, in his opinion, her fatigue was due to anemia. Another physician, called by Mrs. Litwin, testified that she had "chronic smoldering brucellosis from the time that she was infected" and that this would definitely reduce her level of vital activity. Clearly there was evidence supporting the appeal board's determination that her fatigue was attributable to brucellosis, not anemia.

Turning from the question of causation to that of disability, the appeal board observed that Mrs. Litwin made no effort to seek employment after the birth of her child on September 27, 1963, until she became employed as a clerk in an accounting department of another employer on February 7, 1966. Based on Mrs. Litwin's and the medical testimony, the board concluded that brucellosis can become a rationalization as to the basis for unemployment, not the causative factor, and concluded that she had not sustained her burden of proving that she was disabled in 1964, 1965, and in January 1966 from earning wages due to the brucella organism.

The physician called by Mrs. Litwin conceded that, except for the history related by her, he did not have a basis for forming an opinion whether she was disabled in 1964–1965 and the early part of 1966. We, therefore, think the appeal board was within its authority in concluding that she had not sustained her burden of proving that she was disabled during that period due to the brucella organism. Accordingly, we reject the cross-appeal seeking compen-

sation for the period November 4, 1964 through February 6, 1966.

Mrs. Litwin worked continuously from February 7, 1966 until November 25, 1966, except for a short time between two separate employments during that period. Her first job in that period of renewed employment required that she work over 40 hours a week. She quit in June 1966, because of fatigue and because she didn't feel she could make it in to work. She, nevertheless, went to work for still another employer ten days or two weeks later, but quit November 25, 1966, because her health would not permit her to continue working. She was hospitalized for a month beginning November 28, 1966. The record supports the appeal board's determination that after working some 9–1/2 months she was forced to quit without regard to economic necessity because in November, 1966, she became totally disabled from working by the effects of the brucella organism.

After the referee made his determination, but before the appeal board's decision, the physician who was called by Mrs. Litwin again examined her and his further findings were made a part of the record considered by the board. While he stated, based on an examination on May 8, 1967, that he thought he had sufficient evidence to conclude that she had recovered from her chronic brucellosis, he indicated that it would be worthwhile or advisable to have her titer repeated again, at a time at least six months after the completion on January 5, 1967, of a course of therapy which he had prescribed, and that "*if* at this time it is still negative, I think we could forget about the episode of brucellosis in Mrs. Litwin forever." (Emphasis supplied.)

The appeal board observed:

"If only the record showed a negative titer on July 5, 1967, or subsequent thereto, we could forget

about any further disability due to brucellosis; however, there is no such showing. In the absence of a negative titer six months or more after the completion of therapy, the record does not show recovery."

We are persuaded that the appeal board did not err in not jumping to the conclusion that Mrs. Litwin had fully recovered from her disability without evidence of a negative titer on July 5, 1967, or on some date subsequent to July 5.[1] Accordingly, we reject

---

[1] In addition to the testimony quoted in the dissenting opinion, the following appears in the transcript of the testimony of Mrs. Litwin's doctor, Dr. Lerner, following his May 8 examination of Mrs. Litwin:

(Direct examination.)

"*Q.* All right. Now, subsequently, Doctor, that is, after December 22, did she recover from the brucellosis condition?

"*A.* We have evidence as of May 8, 1967, and—I think I wrote to Mr. Kelly on May 11, three days after the test was done, that her serologic agglutination titer for brucellosis was negative, and this is the first test she had ever had recorded negative in any of the records I have seen that she had. So that on the basis of this, we certainly could no longer make the diagnosis of brucellosis in Mrs. Litwin at that time.

"*Q.* And as of that date, she was recovered, is that correct?

"*A.* As of that date, she was recovered.

"Now, in thinking about this, it is necessary for me to say that it would be of value some months later, for instance, even now, to get a titer on her. If her titer is still negative now, I think we could say not only is she recovered, but the chance of any recurrence is very, very small, but we would have to say as of May 8 there was no evidence of brucellosis any more in her condition.

"Now, I still do, I still do have the feeling that it would probably be a good idea to repeat this at this time because at this time, and I suspect very strongly that it would still be negative, if at this time it is still negative, I think we could forget about the episode of brucellosis in Mrs. Litwin forever."

(Cross-examination.)

"*Q.* Let's see. At the trial, if I recall your testimony correctly, you were sanguine enough at that point, after having treated her and hospitalized her and observed her reaction to your treatment, to hypothecate that it would, within six months, you felt you could clear up her brucellosis. Right? Is that correct? Do I recall your testimony correctly?

"*A.* Well, I certainly feel, following six months of seeing her, and I feel now that six months following treatment, and within six months I predicted that her titer, if treatment was correct, that her titer ought to be negative and, indeed, within six months I believe her titer was negative and I would certainly feel that any residual symptoms of · chronic brucellosis should be absent by this time, that she should return to a state of health which would be free of the factor of brucellosis. I think this is a generous period of time.

Difco's appeal and affirm the appeal board's determination that on November 28, 1966, Mrs. Litwin was totally disabled and its order directing that she be paid compensation from that date until a further order of the department.[2]

We also conclude that the record supports the appeal board's findings that Mrs. Litwin was employed as a laboratory aide, not as a laboratory technician, and that what she did can be quickly learned and effectually performed under the direction of those in charge without the necessity of "special trade or previous training" (*Leitz* v. *Labadie Ice Co.* (1920), 211 Mich 565, 572) and the appeal board's determination that her work was "unskilled labor".

---

(Re-direct examination.)

"Q. Just one last thing to clear up. I think you stated that although the titer was, was negative—excuse me—on May 8 of 1967, certainly on May 8, 1967, she was not free from the diminishing vital force caused by the brucellosis?

"A. Mr. Kelly, that is a question I really can't answer, but I, I think the best I could say in all fairness is that six months after she was treated, after treatment ended, she should have been well again of her brucellosis.

"Now, as I have also stated, and would like to repeat for the record, it would be worth-while medically for Mrs. Litwin to have her titer repeated again.

"*Mr. Kelly:* Okay. I have no further questions.

(Re-direct examination by Mr. Mitseff.)

"Q. When you refer to six months, you are referring to the period after she was hospitalized, aren't you, Doctor?

"A. After the period when, after the day she went home. Let me just—as a matter of fact, after her total therapy, as I looked at my records, again, was a therapy of three weeks, and on January 5, 1967, I have in my notes that she has completely had three weeks of therapy, so that following six months following this, I would think this is a long enough period of disability as I could reasonably ascribe to any of her brucellosis.

"*Mr. Mitseff:* Thank you, Doctor."

(Deposition concluded.)

[2] After the submission of this appeal the parties filed a stipulation stating that Mrs. Litwin obtained employment November 8, 1969, and was earning wages higher than she was receiving at the time of her injury, and that no compensation should be awarded for any period in which she is earning wages equal to or greater than those at the time of injury and that we should consider the stipulation as a part of the record.

Mrs. Litwin's final contention on her cross-appeal relates to the construction of § 1, part II of the act which, as amended by PA 1943, No 245, provides:

"The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in the case of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death." MCLA § 412.1 (Stat Ann 1968 Rev § 17.151).

The amendment preserves, at least for the purpose of determining the time or date of injury, the distinction between "accidental" and "occupational" diseases existent before part VII, concerning occupational diseases, was added by PA 1937, No 61. See *Blaess* v. *Dolph* (1917), 195 Mich 137, and *Frankamp* v. *Fordney Hotel* (1923), 222 Mich 525, holding, before the enactment of part VII, that infections, streptococcus in *Blaess* and typhoid fever in *Frankamp,* contracted by the employees seeking compensation in those cases, were accidental, and hence compensable, not noncompensable occupational diseases. *Cf. Gower* v. *Department of Conservation* (1947), 317 Mich 333.

No claim is made in behalf of Mrs. Litwin that her contraction of the brucellosis infection was like the contraction of typical occupational diseases in that it was not attributable to a single event. *Cf. Finch* v. *Ford Motor Company* (1948), 321 Mich 469, 475. Accordingly, we think the record supports the finding and determination of the appeal board that the time or date of injury was February 9, 1962, not the last day of her employment by the defendant Difco.

Affirmed. No costs, neither party having prevailed in full.

Bronson, J., concurred.

J. H. GILLIS, J. (*Concurring in part and dissenting in part.*)

I agree with the majority opinion except for the following.

The appeal board erred in failing to terminate the compensation as of May 8, 1967. The deposition of the plaintiff's own physician, Dr. Albert Lerner, disclosed the following: On May 8, 1967, Dr. Lerner re-examined Mrs. Litwin and conducted certain tests which disclosed that the serologic agglutination titer for brucellosis was negative. The doctor stated:

"So that on the basis of this, we certainly could no longer make the diagnosis of brucellosis in Mrs. Litwin at that time."

The doctor was then asked the following question and gave the following answer:

"*Q.* And as of that date, she was recovered, is that correct?

"*A.* As of that date, she was recovered."

The doctor went on to testify that the plaintiff had some symptoms related to an iron deficiency anemia which, the doctor concluded, was not related to the brucellosis. The doctor was very specific in his diagnosis and emphasized "She would certaintly not be incapacitated further on the basis of her brucellosis  *  *  *.*"

Later, on cross-examination, the doctor reiterated

"I would certainly feel that any residual symptoms of chronic brucellosis should be absent by this time  *  *  *.*"

The doctor subsequently stated:

"It would be worthwhile medically for Mrs. Litwin to have her titer repeated again."

It is this last statement that I think has misled my colleagues and perhaps the appeal board as well. It is obvious from Dr. Lerner's testimony that he believed that a person who has once had brucellosis should have re-examinations. This, however, does not denote that the patient is suffering from any residual effects from brucellosis. As delineated above, the doctor clearly states that the patient did recover from her brucellosis on or before May 8, 1967.

There is not one iota of evidence in the record to support the appeal board's determination to continue compensation past May 8, 1967.

I would reverse this portion of the appeal board's determination.