DIXON v COLDWATER STATE HOME

1. WORKMEN'S COMPENSATION—APPEAL AND ERROR—FINDINGS OF
   FACT—SCOPE OF REVIEW—LEGAL STANDARDS.

   The Court of Appeals will not disturb findings of fact made by the
   Workmen's Compensation Appeal Board where the findings are
   supported by the record, but the court will examine the board's
   application of legal standards.

2. WORKMEN'S COMPENSATION—PREEXISTING AILMENT—RESURGENCE
   OF INJURY—COMPENSABLE CLAIMS—LEGAL STANDARD—AGGRA-
   VATION OF AILMENT—WORKING CONDITIONS.

   A work-related aggravation of a preexisting ailment as well as a
   resurgence of a work-related injury after an inert period are
   compensable workmen's compensation claims, and the proper
   legal standard in either case mandates only that the claimant
   demonstrate that the disability is a function of aggravation of
   the preexisting condition, on its contingent infirmities alone, or
   in conjunction with the condition at the place of work.

3. WORKMEN'S COMPENSATION—WITNESSES—CREDIBILITY OF WITNESSES
   —DISCRETION.

   The weight and credibility afforded the testimony of both lay and
   medical witnesses in proceedings before the Workmen's Com-
   pensation Appeal Board are matters left solely to the board.

4. WORKMEN'S COMPENSATION—LEGAL STANDARDS—INAPPROPRIATE
   STANDARDS—BURDENSOME STANDARDS—APPEAL AND ERROR—
   PROPER DETERMINATION—REMAND.

   Application by the Workmen's Compensation Appeal Board of an
   inappropriate legal standard which is overly burdensome to the
   plaintiff will result in reversal of a board determination against
   plaintiff's claim and a remand for a proper determination
   under the correct legal standard.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 58 Am Jur, Workmen's Compensation § 530.
[2] 58 Am Jur, Workmen's Compensation § 193 *et seq.*
[4] 58 Am Jur, Workmen's Compensation § 371 *et seq.*

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 November 13, 1974 at Lansing. (Docket No. 17838.) Decided March 24, 1975. Leave to appeal denied, 394 Mich 789.

Edrie Dixon presented her claim for workmen's compensation against the Coldwater State Home and Michigan State Accident Fund. Benefits denied. Plaintiff appeals. Reversed.

*Rapaport, Siegrist, Sablich & Mitchell,* for plaintiff.

*Ward F. Ellison,* for defendant.

Before: BRONSON, P. J., and D. E. HOLBROOK and V. J. BRENNAN, JJ.

D. E. HOLBROOK, J. The plaintiff was injured in a fall on June 14, 1966, in the course of her employment with the defendant Coldwater State Home. Benefits were awarded and paid from June 15, 1966 to April 15, 1967. The plaintiff returned to work on June 19, 1967, and continued in the defendant's employ until December 5, 1968. On that day, she left work complaining of headache, backache, and nausea. The plaintiff has not returned to work since that incident.

A workmen's compensation referee heard the plaintiff's petition for benefits on April 9, 1970. Although he ruled that she had not suffered a compensable injury on December 5, 1968, he did hold that her disability was a residual effect of the earlier incident and concluded that it was total. On July 10, 1973, however, the Workmen's Compensation Appeal Board reversed. It held "no continuing disability from time of injury to the present time that provides a clear trail of causal

relationship" and denied benefits. The plaintiff appeals that decision to this Court.

The standard of review is well settled; this Court will not disturb findings of fact made by the board as long as there is record support. *Lemanski v Frimberger Co,* 31 Mich App 285; 187 NW2d 498 (1971), *Litwin v Difco Laboratories, Inc,* 28 Mich App 132; 184 NW2d 318 (1970). See also *Carter v Kelsey-Hayes Co,* 386 Mich 610, 615; 194 NW2d 326, 328 (1972), *Thornton·v Luria-Dumes Co-Venture,* 347 Mich 160, 162; 79 NW2d 457, 458 (1956). This Court does, however, examine the appeal board's application of legal standards. See, for instance, *Moore v Gundelfinger,* 56 Mich App 73, 223 NW2d 643 (1974), and *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217, 220–221; 210 NW2d 360, 363 (1973).

That work-related aggravation of a preexisting ailment is compensable is not seriously open to question. *Sheppard v Michigan National Bank,* 348 Mich 577; 83 NW2d 614 (1957), *cf. Gibbs v Keebler Co,* 56 Mich App 690; 224 NW2d 698 (1974). Neither is an award for resurgence of a work-related injury after an inert period. *White v Michigan Consolidated Gas Co,* 352 Mich 201, 211; 89 NW2d 439, 445 (1958). Although the board could have sustained continuing benefits it was not obligated to do so. The weight and credibility afforded both lay and witnesses' testimony in such proceedings are matters left solely to the board for determination. *White, supra,* 352 Mich at 210; 89 NW2d at 444, and cases cited therein.

A review of the evidence in this case reveals some conflict. Plaintiff testified that she felt as if she got progressively worse after she fell and then returned to work, and that her headaches, backaches and cramps in her left leg grew worse. She

further testified that she didn't have this difficulty before her accident in 1966. She said she had had headaches almost continuously since the fall.

Plaintiff presented the testimony of Walter W. Sawyer, M.D. who treated her for some time. To some extent he relied upon the findings of doctors at the University Hospital in Ann Arbor. There a finding of degenerative arthritis of the cervical spine was made. Sawyer stated that slipping on a floor would aggravate an arthritic back condition and that heavy lifting could likewise aggravate the condition. As to her background of arthritis he said:

"Yes, she's been treated for arthritis a long time before the injury, but it was a more or less generalized arthritis you have in your arms and legs and back and all over like a lot of us have, nearly everyone has some of that. I have in my notes I treated her for generalized arthritis, that would include the back."

As to the plaintiff's alleged disability, he said:

"A. Well, that's a difficult question, as all I have to go pretty much is what the patient tells me. I don't know how much pain she has in her back, there is no way to see pain.

"Q. [Mr. Ellison, defendants' attorney] When I asked you if she was physically disabled, are you aware of any physical condition you would testify to which would prevent her from doing the work, do you believe she could have done this work if she wanted to?

"A. Well, going back a ways, I released her to go back to work, quite a ways back."

He did say that he had released her for work on September 6, 1966. As to the possible interrelation of conditions, the following colloquy took place:

"*Q. [Mr. Sablick, plaintiff's attorney]* So it is possible the fall had an effect on several conditions Mrs. Dixon has, is that not true?

"*A.* Yes.

"*Q.* So in addition to the arthritis it could have affected the ulcer and the tension headaches?

"*A.* Yes.

"*Q.* Do you think that happened here—aside from possibility?

"*A.* I'm not sure. I didn't see her fall—maybe she didn't fall at all. I am not going to say one way or other. Assuming she fell, yes.

"*Q.* What could, what effect would this have on these conditions then?

"*A.* Well, I think probably the tension and the worry and perhaps the pain for which she was given certain medications, would probably have aggravated.

"*Mr. Elliston:* Aggravated what?

"*A.* I forgot what the question was.

"*Q.* Aggravated the ulcer?

"*A.* Yes.

"*Q.* What about the headaches?

"*A.* Yes."

Defendants presented the deposition of Dr. Charles T. Vear, who never physically examined plaintiff.

"*Q. [by Mr. Elliston]:* In your opinion, Doctor, based on your conversations with Mrs. Dixon, and your examination, limited as it may be, of her, do you have an opinion as to whether or not she is physically able to carry on normal activities for a woman of her age?

"*A.* In my opinion based on my previous contacts with her, she is able.

\* \* \*

"*Q.* You have no opinion then with regard to her ability of working or not working?

"*A.* I have an opinion depending on the job. As long as it didn't require an excessive amount of lifting at her

age, if it was appropriate for a woman her age, I think if she wanted to she probably could handle it."

These conclusions notwithstanding, he prescribed Darvon, Tylenol, Indocin, Choloral Hydrate and Seconal.

Plaintiff's exhibit No. 1 is Dr. Sawyer's statement of disability to Aetna Life and Casualty Company, dated April 9, 1969. The report stated that plaintiff's osteoarthritis "was aggravated by a fall which she sustained at the Coldwater State Home and Training School * * * ". Plaintiff's exhibit No. 2 is a letter dated April 1, 1969, from Sawyer to defendant Coldwater State Home stating that she could not return to work for an undetermined amount of time "due to the seriousness of her condition".

Defendants' exhibit A is dictation of Dr. Sawyer on plaintiff's admission to the Hillsdale Hospital, December 13, 1968. The diagnosis thereupon appearing is, Cephologia (or "head pain"), chronic duodenal ulcer and retinitis. The report states in pertinent part:

"This 61 year old woman has been having occipital headaches for several years. These headaches seem to vacillate from mild to severe and this seems to be associated somewhat with nervous tension and stress. She claimed before admission to the hospital that the headaches were unendurable and it was decided to admit her to the hospital for an attempt to improve the situation. She has had an old choreo-retinitis of the left eye but it is felt that this probably has no bearing on her symptoms at the present time as far as the headaches are concerned. She also has a conronic duodenal ulcer but this has not been bothering recently. During her stay in the hospital, the headaches improved somewhat but were still with her."

Defendants' exhibit B was Sawyer's personal history of plaintiff. This states that plaintiff had "severe and long standing occipital headaches". It also states that an X-ray after the fall in 1966 showed no fracture but did show "considerable arthritis of the spine". Further, the following appears: "Apparently the back is not bothering her very much any more."

The evidence in this case would have supported a board determination of total, compensable injury. Also there may have been facts present for the board to conclude otherwise. In finding the facts, we rule that the board applied an incorrect legal standard.

The appeal board in its opinion stated: "There has been no continuing disability from time of injury to the present time that provides a clear trail of causal relationship." We read this as the legal standard applied to the case. This, in effect, provides that, to justify compensation being ordered, the plaintiff would have had to clearly demonstrate that she was disabled from the date of the fall until the date of the appeal board decision. This is not the case. A disability may be dormant and then "flare up" again. The proper legal standard in this case mandates only that plaintiff demonstrate that the disability is a function of aggravation of her arthritic condition, or its contingent infirmities, by the fall alone or in conjunction with the conditions at her place of work. Because the inappropriate legal standard was overly burdensome to plaintiff, as applied, this case must be remanded for further proceedings, including a proper determination under the correct legal standard, and the taking of further evidence if needed. We point out that it might be helpful to the appeal board to have the University

of Michigan Hospital report and the hospital's examining doctor's testimony, which appear to us to be of importance.

We again lament the fact of unduly lengthy delay in workmen's compensation cases. Here, excluding the injury of 1966 and payments accorded as a function thereof, this matter has taken over five years to this date. The petition for hearing was dated October 2, 1969; the hearing was held on April 9, 1970, but left open to allow the taking of a deposition of a second doctor completed on June 1, 1970, followed by the referee's decision on October 7, 1970; the application for review was dated October 22, 1970; the appeal board took until July of 1973 to complete its decision; and at this late date we complete our review of the case. Five years is too long and the case is not complete yet. See generally *Morris v Baker Auto Parts,* 57 Mich App 65; 225 NW2d 179 (1974).

Reversed and remanded for further proceedings in accord with this opinion. We do not retain jurisdiction. Costs to plaintiff.